No. 14,238.

LOUISIANA AND NORTH WESTERN RAILROAD COMPANY vs. STATE BOARD OF APPRAISERS.

SYLLABUS.

1. The words "substantially completed," as used in article 230 of the constitution, applies to a railroad, the "road-bed" of which was in such condition that the most that is now claimed for it is, that it lacked 20 per cent. of completion, as also, possibly, a total of 815 feet of bridge and trestle work, in a distance of some 18 miles, when the constitution was adopted; and, hence, such road is not entitled to exemption from taxation under that article.

2. If the question were more doubtful than it is, the claim for exemption would be denied, as the case belongs to a class in which every reasonable doubt is resolved adversely to the claimant.

APPEAL from the Third Judicial District, Parish of Claiborne— *Edwards, J.*

*John A. Richardson,* for plaintiff, appellant.

*Walter Guion,* Attorney General, and *John C. Theus,* District Attorney (*McClendon & Seals* and *Lewis Guion,* of counsel), for defendant, appellee.

*McClendon & Seals,* for intervenors, appellants.

Railroad Company vs. Board of Appraisers.

The opinion of the court was delivered by

MONROE, J. Plaintiff, having been assessed for the years 1899, and 1900 upon 18 and 48-100 miles of railroad (main track) and 62-100 of a mile of siding and switch track, lying between Homer, in the parish of Claiborne, and the Arkansas state line, brings this suit to annul the assessment, on the ground that the property sought to be taxed is exempt under so much of article 230 of the constitution as provides that "There shall also be exempt from taxation for a period of ten years from the date of completion any railroad or part of such railroad that may hereafter be constructed, and completed prior to January 1st, 1904." The defence is, practically, that the stretch of road in controversy falls rather within the meaning of a subsequent clause of the same article, which reads: "Nor shall the exemption herein before granted apply to any railroad, or part of such railroad, the construction of which was begun and the road-bed of which was substantially completed at the date of the adoption of this constitution."

The police jury of Claiborne parish and the town of Homer have intervened, and claim that even though it should be held that the road is exempt from state taxes it is nevertheless liable for parish and municipal taxes. There was judgment in the district court rejecting the demand of the plaintiff and dismissing the intervention and the plaintiff and the intervenors have appealed. Whether the road-bed of the road for which the exemption is claimed was "substantially completed" within the meaning of the constitution at the date of the adoption of that instrument is the only serious question in the case. The constitution was adopted May 12, 1898 (art. 326.) From the pleadings and evidence in the record before us, it appears that, prior to 1897, the plaintiff owned and operated a railroad from Homer in the parish of Claiborne to Bienville, in the parish of Bienville, a distance of about thirty-six miles, in a southerly direction, and that, in June, 1897, it located an additional thirty-six miles, from Homer, northward, to Magnolia, in the State of Arkansas; and that, of this extension, the 18.48 miles which is the subject of the present controversy, with the sidings and switches hereinbefore referred to, lie within the State of Louisiana and the parish of Claiborne. It also appears, at least as a fair inference from the evidence, that the work of construction followed the location of the extension and went on continuously until its completion.

The only witnesses examined were those called by the plaintiff. T. D. Beardsley was its general manager in 1897, and 1898, and has been ever since. He testifies that, with the exception of that part of the road which runs through the town of Homer, a little more than a mile in length, the work of building the extension was done by contractors, from whom it was accepted July 26, 1898, and that they were paid in full upon the following day, though he also states that the road was not then completed and that in some places it was still incomplete at the time that he was testifying. Being asked, "Aside from the work done by the company in or near Homer, "what was the dirt work, or rather dirt (?) work to be done, on the 12th of May, 1898, in Louisiana?" To which he replied, "I could not give that of my own knowledge, I depended entirely upon the engineers' reports, and their testimony gives a summary of all the information I have."

J. C. Allen was assistant engineer during the period of construction, and is so at present. He testifies that they reached the Louisiana state line in the construction of bridges and track laying about August 1st, 1898, up to which time no work of that character had been done in Louisiana, except, perhaps, within the corporate limits of Homer. He does not pretend to know the amount of earth work done for the purposes of the road, but states that they were still grading after the 12th of May, 1898.

G. Knoble is an engineer. He testifies that the road-bed of a railroad is the foundation upon which the superstructure rests, and that it includes everything from the bottom of the cross-ties down to the natural surface, and to the foot of the driven pile, in bridges. The following are two of the questions propounded to him, under commission, and his answers thereto: "Is the road-bed of a railroad substantially completed that has no piling delivered on the road and none driven, no bridges or trestling built, and, say, one-tenth of the earth work done? A. A road-bed of a railroad cannot be called completed until all the work and material necessary for grading and bridging such road is placed in the proper position, as shown by the established grade line." "Is a road-bed of a railroad substantially completed that is wanting in any of these requisites? A. It is not."

W. M. Washburn is a civil engineer, and was in charge of the work of constructing the road from Homer, in Louisiana, to Magnolia, in

Arkansas, a distance of thirty-six miles; and we understand him to testify that there are forty-one bridges on the entire line and that the total length of the bridges and the trestles is 1680 feet. He, also, testifies that the road-bed, between the corporate limits of Homer and the state line, about 17 miles long, contains 212,291 cubic yards of earth, and that the work done by the company in the town amounts to 60,000 yards, making a total of 272,000 or 273,000 yards. He says, "I made monthly estimates of all the work done on the line during construction. I have no copy of monthly estimate for April, 1898. My recollection is that less work was done in April than was done in March. Up to the 1st of April 136,767 yards had been moved. During April, and up to the 12th of May, in the neighborhood of 40,000 yards were moved. No bridging or trestling was done on that part of the line prior to May 12th, 1898. * * * My estimate would be that 20 per cent. of the grading on that part of the line remained to be done May 12th, 1898. * * * I should not consider a deficiency of 20 per cent. very near completion. * * * The amount of grading, in cubic yards, was in the neighborhood of 270,000 yards, of which between 50,000 and 60,000 yards was done subsequent to May 12th, 1898."

He further testifies that, whilst some right of way was probably cut in Louisiana in August and September, the work of grading did not begin until December, 1897. The only testimony as to the proportion of bridging, on that end of the road, is the statement of the witness that about 600 piles were required. The maximum grade of the road is shown to be about 1 per cent., and as the witness Knoble estimates the cost of "clearing and grubbing the right of way and the grading and bridging of the road-bed" at only $2000 per mile, it is evident that the *average* grade was very light.

This testimony leaves much to be desired in the way of convincing force. The only witness who undertakes to be at all definite as to the proportion of the road-bed which had been constructed prior to May 12th, 1898, is the engineer, Mr. Washburn, and whilst he is specific enough as to the total quantity of earth to be moved, and no doubt testified upon that subject from his records, he seems to have fallen back upon his recollection when attempting to state the proportion of the work which had actually been moved prior to May 12, 1898, and has, apparently, fallen into some confusion in giving the percentage.

Thus; if it be true, as he states at one time, that 136,767 yards had been moved up to April 1st, and that about 40,000 yards were moved between that date and May 12th, the total would be 176,767 yards, and if we put the whole amount at 273,000 yards, the highest figure stated by him, there would still be 96,000 yards, or over 35 per cent. to be moved, whereas, at another time, he states that the amount moved after May 12th was between 50,000 and 60,000 yards, which he estimates to have been 20 per cent. of the whole.

Several years had elapsed between the time at which the work was done and the date of the giving of the testimony and it was not to have been expected that the witness could have carried figures of that kind in his memory. It may be, therefore, that the amount of work done, after May 12th, was less than 50,000 yards, or over 60,000, but, as it is not suggested that the monthly estimates, upon which the contractor was paid have been lost, or destroyed, the question which presents itself to us is, why, in a matter of this kind, should the important fact upon which the plaintiff relies be left in such uncertainty?

The same condition exists with regard to the bridges and trestles. We are informed that there are forty-one bridges, and 1680 feet of bridges and trestles on the line, meaning, as we understand it, the entire line from Homer to Magnolia; but we are not informed what proportion of this work is on the Louisiana side. The witness Knoble makes no distinction between a road-bed that is completed and one that is "substantially" completed; for, whilst he testifies that it is "completed" when all the work and material required for grading and bridging is placed in its proper position, he also testifies that it is not "substantially completed" if it lacks any of these requisites, so that, according to his view, it must be completed in order to be substantially completed. The framers of the constitution evidently intended, however, that the distinction which we think exists, should be recognized, otherwise the participle "completed" would have been used without the qualifying adverb. As it is very justly said by the learned judge of the district court, "the intention of the framers of the constitution * * * was to encourage the building of railroads throughout the entire state," but it was not the intention, and the fact is made manifest, to exempt from taxation roads already established, or the work upon which had so far progressed as to render it,

reasonably certain that they would be established without such encouragement, and we agree with our learned brother that the road in question was in the latter condition.

If, however, the question were more doubtful than we think it is, we should still be constrained to affirm the judgment rejecting plaintiff's demand. The case belongs to a class of which it has been said: "The rule of construction in this class of cases is, that it should be most strongly construed against the corporation. Every reasonable doubt is resolved adversely. Nothing is taken as conceded but what is given in unmistakable terms, or by an implication equally clear. Silence is negation and doubt is fatal to the claim." Fertilizing Co. vs. Hyde Park, 97 U. S. 659; Yazoo & Miss. Valley R. R. Co. vs. Thomas, 132 U. S. 185; Ford vs. D. & P. Land Co., 164 U. S. 666; City vs. Robira, 42 Ann. 1098.

The police jury and the town of Homer had an interest which justified their intervention, since, if the claim for exemption had been sustained it would have applied to parish and town, as well as to state, taxes. C. P. 390.

It is, therefore, ordered, adjudged, and decreed, that the judgment appealed from be annulled, avoided and reversed in so far as it dismisses the intervention of the parish of Claiborne and the town of Homer, and that there now be judgment maintaining said intervention, at the cost of the plaintiff in the suit, and it is further ordered, adjudged, and decreed, that in all other respects, said judgment be affirmed.

Rehearing refused.