HIGGINS,, Justice.
 

 . - The plaintiff banks each instituted suit against the Louisiana Taxi-Commission, the City of New Orleans; the Board- of Assessors of the Parish of Orleans,•-the Board of'Equalization-of the Parish of Orleans, and the State Tax Collector for the Parish of Orleans to, reduc.e the respective assessments on the shares of their capital stock for the year 1939, and to require the assessing authorities to value the shares of-stock in accordance with.the provisions of Act 14 ■ of thé Éxtra Session of 1917,'as' amended'by Act 172 of 1938. The reduction in the assessment claimed by each bank is as follows:
 

 Prom: To:
 

 Whitney National Bank of New Orleans.............. $3,348,000.00 ? 540,184.00
 

 The Hibernia National Bank in New Orleans............ $2,122,707.90 $1,500,000.00
 

 The National Bank of Commerce in New Orleans____ $2,280,280.00 $1,500,000.00
 

 making a total claimed reduction of $4,210,803.90.
 

 The defendants filed exceptions of no right and no cause of action putting at is-, sue the construction, and constitutionality of .Act- 172 of 1938, ■ The district judge overruled these exceptions and the defendants then filed answers, again taking issue with the interpretation and effect which the banks- asserted should be given, to the provisions of Act 172 of 1938, and, in the alternative, the defendants specially pleaded that, if the construction contended for by the banks were adopted by- the court, the statute would be unconstitutional and in' violation of Section 1 (the Uniformity Clause) and Section 4'-(the' Exemption Clause) of Article Xof the-Constitution Of Í921,' as ’ amended. By-special pleas, the defendants also urged that the banks were estopped from contesting in court the correctness of the assessments, by virtue of the, provisions of Section 4 of 'Act 14 of! 1917, as ' amended, ■ and Section 25 of'Act Í70’of 1898, in'that the returns provided' for by Act 14 of 1917, Ex.Spss., as amended, were not filed until after-'January 20,' 1938. '
 

 The three cases were consolidated and tried on the above issues on stipulations of fact. -
 

 The trial judge, iri two written Opinioris,' sustained the plaintiffs’' contentions, over-
 
 *50
 
 ruled all of the defendants’ exceptions and pleas, and rendered judgment in favor of the plaintiffs, as prayed for.' The defendants appealed.
 

 It appears that the shares of stock of' the Whitney Bank were assessed at $3,348,-000. This figure was arrived at by adding to its common capital of $2,800,000, the amount of its declared surplus and undivided profits, of $6,237,580 (this amount was treated in round figures as $6,237,000), and by deducting from the total thus obtained, the sum- of $5,689,000, representing the book value of its real estate, banking houses, furniture and fixtures. By apply-: ing the provisions of Act 172 of. 1938 to this assessment, the Whitney Bank contends that, as its common capital is $2,800,-000, and i.ts declared surplus arid undivided profits are $6,237,580, .and as it has no contingent reserves, its combined declared surplus and undivided profits exceed the par value of its common capital only to , the extent of .$3,437,580. Adding this excess of surplus and. undivided profits to the par value of the common capital ($2,800,000) a gross figure of $6,237,580 is obtained. However, the Whitney Bank (the only one of the three banks which owns real estate) pays the usual ad valorem taxes on $5,697,396, the assessed value of its real estate in the State of Louisiana. It is not disputed that Act'172 of 1938 expressly authorizes the deduction of this item in computing the assessment on its shares of stock. Therefore, it is said that the assessment of the 'Whitney Bank’s shares of stock should be reduced- from $3,348,000 to $540,184', 'which figure represents the total amount of ■ its surplus and undivided profits of $6,237,580,' less $5,697,396, the assessed value of its real estate.
 

 The shares of stock of the Hibernia Bank were assessed for $2,122,708. This figure was reached after adding to the common capital of $1,500,000, the full amount of the declared surplus and-undivided profits of $622,708. Applying the provisions of Act 172 of 1938 to this assessment, the Hibernia Bank contends that, as its common capital is $1,500,000, and its combined declared surplus and undivided profits are only $622,708, and as it has no-contingent reserves, its surplus and undivided profits should not enter into the calculation of the assessment, because they do not exceed the par value of the common capital, and therefore, the assessment should be $1,500,000 and not.-$2,122,708.
 

 In reference to the National Bank of Commerce, its shares were assessed at $2,-280,280. This amount was arrived at by adding to- its common capital of $1,500,000, the full amount of its declared surplus and undivided profits of $780,280. Applying the provisions of Act 172 of -1938 to this assessment, - the National Bank' of Commerce urges that, as its' common capital- is $1,500,000, and its' combined declared surplus, undivided profits -and contingent reserv-es.'do not .exceed the par value of-the common capital, the assessment -should be $1,500,000 and not $2,280,280.
 

 ' The first point raised- by the exceptions of no right and no cause of. action - is whether Act 172 of 1938 authorizes the-taxing authorities,to .assess the shares of capital stock 'of- the banks by adding to -the common, capital, the whole of-the surplus,
 
 *52
 
 undivided profits and the contingent reserves, as defendants claim, or whether, as maintained by the banks, the surplus, undivided profits and contingent reserves enter into the computation only in the amount that they exceed the par value of the common capital.
 

 The second issue is whether, if given the construction contended for by the banks, Act 172 of 1938 would be unconstitutional.
 

 We shall discuss these points in their respective order:
 

 The law providing for the assessment of the shares of capital stock in banking corporations is Act 14 of 1917, Ex.Sess., as amended by various subsequent statutes, including Act 172 of 1938, which amended Sections 2 and 4, the pertinent parts of which sections read, as follows:
 

 “Section 2. That no assessment shall hereafter be made against the capital stock, surplus, or undivided profits of any bank, banking company, firm, association, or corporation engaged in the banking business, chartered under the laws of this State, or the United States, doing business in this State, whose capital stock is represented by shares, but the shares shall be assessed to the shareholders at the domicile or location of the bank, banking company, firm, association, or corporation, who appear as such upon the books,
 
 *
 
 *
 
 * "
 

 “Section 4. That the value of the said shares of stock in any bank, banking company, firm, association, or corporation engaged in the banking business shall be fixed annually by the Louisiana Tax Commission for both State and local assessment purposes, and shall not exceed the par value of said shares of stock, plus any amount in which the combined declared surplus, undivided profits and contingent reserves of any such banking institution may exceed the par value of the common capital thereof; * *
 

 The original statute, Act 14 of 1917, Ex. Sess., was enacted to provide a system for the taxing of the shares of stock and other property of banks, etc., both state and national. It consists of a title and nine sections and has beep amended four times, to-wit, by Act 116 of 1922, Act 221 of Í928, Act 6 of 1934 and Act 172 of 1938. From 1917 to 1938, Section 4 of the statute provided “that the basis for arriving at the value of the said shares of stock in any bank, * * * shall be the value of said stock as shown by the statements of said bank, banking company, firm, association, or corporation * * *Act 172 of 1938 amended this section so as to read “ * * * that the value of the said shares of stock in any bank, * * * shall be fixed annually by the Louisiana Tax Commission for both State and local purposes, and shall not exceed the par value of said shares of stock, plus any amount in which the combined declared surplus, undivided profits and contingent reserves of any such banking institution may exceed the par value of the common capital thereof; *
 
 * * ”
 
 Thus, it will be seen that the amendment of this section by Act 172 of 1938, made a very material change in the language thereof. It. is clear that the amendment of 1938 was not a mere re-enactment of the same language previously
 
 *54
 
 used in Section 4. On the contrary, the wording now employed is entirely different from that appearing in the former law.
 

 In construing the provisions of Section 4, before the 1938 amendment was passed, in the case of Mortgage & Securities Co. v. City of New Orleans et al., 153 La. 1073—1075, 97 So. 44, 45, we said: “* * * The value of the shares of stock, of course, is the sum of the capital, surplus' and undivided profits, which is ascertained by a statement required to be furnished by an officer of the bank. * * * ”
 

 The jurisprudence is well-settled that, when a statute' (particularly one which has been interpreted by the courts) is amended, and the wording of the act is altered, the Legislature intended to change the former law on the subject. United States v. Southern Pacific Co., D.C., 230 F. 270-274; United States v. Bashaw, 152 U.S. 436, 14 S.Ct. 638, 38 L.Ed. 505; Lewis’ Sutherland Statutory Construction (2d Edition), Vol. 2, Sec. 401, p. 777, and 59 C. J. Verbo “Statutes”, Section 647, p. 1097.
 

 It is a recognized rule of statutory construction that the act as a whole ought to be interpreted so that no clause, sentence, or word shall be superfluous, or meaningless, if that result can be avoided. Washington Market Co. v. Hoffman, 101 U. S. 112, 115, 25 L.Ed. 782, 783; Ex parte Public National Bank of New York, 278 U. S. 101, 104, 49 S.Ct. 43, 73 L.Ed. 202, 204. See also State v. Sage, et al., 162 La. 630, 110 So. 884; Downs v. Drew, 166 La. 439, 117 So. 454; Jackson State National Bank v. Merchants’ Bank & Trust Co., 177 La. 975, 149 So. 539, and 59 C.J., Sec. 595, pp. 995-998.
 

 It is also well-established that tax laws are to be interpreted liberally in favor of taxpayers and that the words defining things to be taxed should not be extended beyond their clear import. Uncertainty in the language of the statute must be resolved against the government and jn favor of the taxpayer. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 508, 52 S.Ct. 260, 76 L.Ed. 422, 429; State v. Standard Oil Co., 188 La. 978, 992, 178 So. 601; State v. State Agricultural Credit Corp., Inc., 176 La. 590, 597, 146 So. 159, and Elmer Candy Co. v. Fauntleroy, 5 Cir., 24 F.2d 95.
 

 If the intention of the Legislature was that the whole of the declared surplus, undivided profits and contingent reserves should be included in fixing the value of the bank stock, no change in the former language would have been necessary, or if the Legislature intended merely to restate the former language without changing its meaning, the amendment would have read: “* * * and shall not exceed the par value of said shares of stock plus the declared surplus, undivided profits and contingent reserves.” But, the amending statute does not so provide. It reads, “plus
 
 any amount in which the combined
 
 declared surplus, undivided profits and contingent reserves * * *
 
 may exceed the par value of the common capital thereof * *
 
 *.” (Italics ours.) If the contention of the defendants were sound, nothing whatever would be added to the statute by
 
 *56
 
 the addition-of the italicized words above quoted.
 

 ■ The language of the controversial clause of Section 4 of Act 14 of 1917, Ex.Sess., as amended by Act 172 of 1938 is free from doubt and uncertainty. The plain language of the statute shows that in valuing the shares of stock for assessment purposes only the excess surplus, undivided profits and contingent reserves, over and above the par value of the common capital, is to be added to the par value of the common capi* tal. - .
 

 When a law is clear and free from all ambiguity, we are not at liberty to disregard the .letter of it, under the pretext of pursuing its spirit. R. C. C. Art. 13. Furthermore, the foregoing history of the act in question shows the clear intent of the Legislature to make a change in the .law, i. e., the method of valuing the shares of stock of a banking institution for assessment purposes.
 

 It is our view that the provision of •the. statute in question indubitably grants the plaintiffs the right to make the claimed deductions.
 

 The, pertinent provisions of the Constitution, ¡under which the special pleas or defenses of unconstitutionality'are predicated, read as follows:
 

 Section 1, Article 10, Constitution of 1921, amended November 6, 1934: “* * * all taxes shall be uniform upon the same class of subjects throughout’the territorial limits of the authority levying the- tax * * No property shall be assessed •for more than its actual cash value, ascertained1 as directed by .law.” ■ .■
 

 Section 4, of the same Article, as amended in 1938, provides:
 

 “The following property, and no other, shall be exempt from taxation * * - Shares of bank stock, surplus, undivided profits and contingent reserves of banks are not listed in this section as property. exempt from taxes and are,, therefore, subject to taxation.
 

 We shall discuss the above issues in inverse order.
 

 The question presented under the alternative plea is, does the provisions of Section 4 of Act No. 14 of 1917, Ex.Sess., as-amended by Act 172 of 1938 (covering an ad valorem tax) exempt from taxation the part of the value of .shares of stock .hr banking corporations based upon the surplus, undivided profits and contingent reserves of such banking institution, up;to the-par value of the common capital thereof?'
 

 The defendants contend that the provisions of the statute purely and simply grant an exemption from taxes in favor- of bahks and point out that, according to th'e’ récord, the exemptions granted in favor of. .the respective banks, in the instant casé, are as follows: Whitney National Bank,. $2,-800,000, National -Bank of Commerce, $780,200, Hibernia National Bank, $622,-707, '
 

 ’- The plaintiffs argue that Act 172 .of 1938'-merely fixes the method or formula for .the ■taxation of bank shares as is indicated by the title of the.act and the legislators; were-,merely classifying the property, for purposes of taxation atjd prescribing, the method by which 'the class,, referred tp should be
 
 *58
 
 taxed, and that this is quite different from granting an exemption from taxes.
 

 Exemptions from taxation are strictly construed, an exemption being an exceptional privilege which must be clearly and unequivocably and affirmatively éstablished. Pearce, et al. v. Couvillon, 164 La. 155, 113 So. 801.
 

 In the case of Louisiana & N. W. R. Co. v. State Board of Appraisers, 108 La. 14, 32 So. 184, 186, this court, in dealing with the matter of exemption from taxes, stated: “ * * * If, however, the question were more doubtful than we think it is, we should still be constrained to affirm the judgment rejecting plaintiff’s demand. The case belongs to a class of which it has been said: ‘The rule of construction in this class of cases is that it should 'be most strongly construed against the corporation. Every reasonable doubt is resolved adversely. Nothing is taken as conceded but what is given in unmistakable terms, or by an implication equally clear. Silence is negation, and doubt is fatal to the claim.’ Northwestern Fertilizing Co. v. Hyde Park, 97 U.S. 659, 24 L.Ed. 1036; Yazoo & Miss. Valley R. R. Co. v. Thomas, 132 U.S. [174], 185, 10 S.Ct. 68, 33 L.Ed. 302; Ford v. Land Co., 164 U.S. [662], 666, 17 S.Ct. 230, 41 L.Ed. 590; City of New Orleans v. Robira, 42 La.Ann. 1098, 8 So. 402, 11 L.R.A. 141.” See, also, Mattingly v. Vial, 193 La. 1, 190 So. 313-315.
 

 No principle of law is better settled in this State than that the Legislature is powerless, directly or indirectly, to grant exemptions from taxation. Louisiana & N. O. Ice Co. v. Parker, 42 La.Ann. 669, 7 So. 898.
 

 In the case of First National Bank of Shreveport v. Board of Reviewers of Assessments, 41 La.Ann. 181, 5 So. 408, 411, the bank and its shareholders instituted an action to obtain a reduction of an assessment., upon shares of stock for the. year 1887. The plaintiff argued that, the Legislature having determined and directed the manner in which the shares of banking associations should be assessed, in order to arrive at their value, and the assessment having been made in disregard of the method or process indicated, the assessment should be rectified and made pursuant to the mode prescribed in Section 28 of Act No. 98 of 1886. This court affirmed the judgment in favor of the Board of Assessments and, on rehearing, when the question was again considered, the court said:
 

 “If anything can be settled by jurisprudence, it .is settled in this state that the legislature is absolutely stripped of power to exempt any property or value from taxation, and that when such exemption is claimed it can be supported only by some provision found in the paramount law. * * * The dilemma is perfect. Either the exemption claimed is made by the paramount law, or the legislature has no power to make it.”
 

 In Southland Investment Co. v. Jeter, 171 La. 106, 129 So. 722, 723, the plaintiff instituted suit for the cancellation of an assessment, contending that, under the provisions of an act of the Legislature, certain exemptions were authorized. The defendant tax assessor filed an exception of
 
 *60
 
 no cause of action, which was maintained by the lower court. In affirming that judgment, the court s.tated:
 

 “If Act No. 7 of the Extra Session of the Legislature for the year 1928 is to be given the effect contended for by counsel for plaintiff, we would have a situation presented whereby a legislative act exempts from taxation something of assessable value which the Constitution says shall not be exempt. The words of the Constitution are:
 

 “ ‘The following property,
 
 and no other,
 
 shall be exempt from taxation.’ * * *”
 

 In New Orleans Securities Co., Inc., v. City of New Orleans, et al., 173 La. 1097, 139 So. 635, 637, in speaking of the act providing for the method of assessment of certain securities, the court said:
 

 “It is obvious that, since the Constitution of 1913, under which the act of 1918 was passed, specifically names the property that shall be exempt from taxation, and expressly excludes all other property from exemption, the act so far as it may conflict with that instrument was unconstitutional when- passed, and, if it does so conflict, is still unconstitutional. * * * ”
 

 In the case of the First National Bank v. Louisiana Tax Commission, 175 La. 119, 122, 143 So. 23, 29, the act (163 of 1924) provided that certain bonds should be assessed at 10% of their market value. The court said: “* * * The statute is so palpably violative of the constitutional requirement that all property that is subject to taxation shall be assessed at its actual cash value, that it has never been enforced. * * * ”
 

 From the-foregoing decisions, it appears that no one can successfully contend that the Legislature has the power to fix a basis for the valuation of shares of stock in a banking corporation for assessment purposes that will result in the total or partial exemption of the value of the shares of stock from taxation.
 

 In the case of In re Construction of Revenue Law, 2 S.D. 58,'48 N.W. 813, 815 (Supreme Court of South Dakota), the legislative act allowed persons, in listing credits for taxation, to deduct ' from the gross amount thereof all bona fide indebtedness. The constitutional provision prohibited the passage of any laws exempting property from taxation, otherwise than as provided in the Constitution. In holding that the deduction was an exemption and, therefore, in contravention of the constitutional inhibition, the court said:
 

 “We are of the opinion, also, that the effect of section 18, in question, is to exempt the property that may be deducted under the provisions of that section from taxation, and that the section is for that reason in conflict with the provisions of the organic act, and void. It is true, the revenue law speaks only of deductions; but in our view deductions, as specified in this, section, and exemptions are substantially the same thing; that the merely calling an exemption a deduction does not render the law any the less objectionable. The language of the organic act plainly declares, that all property, real and personal, shall be taxed according to its value; and, ex
 
 *62
 
 cept as therein provided, it is not within the power of the legislature to exempt any portion of it from taxation; and what it cannot do directly under the constitution it cannot do indirectly. When the legislature, therefore, attempts to so exempt personal property or credits by calling it a deduction, the law is as obj ectionable as though it had used the word ‘exemption’ instead of ‘deduction.’ * * * It specifically provides what exemptions shall or may be made; and the deduction of indebtedness is not in terms, or by implication, embraced within these exemptions. The maxim, expressio unius est exclusio alterius, is directly applicable to this case. But it may be claimed that deductions are not exemptions, and that, as the legislature is not prohibited from making deductions, they are permissible; but, as before stated, calling what is really an exemption a deduction, cannot change its character. This was well stated by Judge Thurman in Exchange Bank v. Hines, 3 Ohio St. 1, when speaking of such a deduction. He says: ‘But what is the argument I am considering but a mere change of words? Is there anything of substance in it? What is the practical effect of allowing the deductions permitted by section 10? Plainly, to exempt just so much of the moneys and credits in the state from taxation. An individual has $1,000 in money, and owes $600. He is taxed, according to section 10, only upon $400 of his money. The residue is exempted from taxation. If this can be done by merely calling an exemption a deduction, I know not where we are to stop. * * * It is the thing itself, I imagine, and not the name, that determines its validity.’ In this case, decided in Ohio, under its amended constitution, containing provisions relating to taxation quite similar to those in our own organic act, the court held that a section in the revenue law of that state providing for deductions of indebtedness from moneys and credits was unconstitutional and void. * * *
 

 “In Little Rock & Ft. S. Railway Co. v. Worthen, 46 Ark. 312, decided by the supreme court of Arkansas, under constitutional provisions quite similar to our own, a section of the revenue law of that state was held unconstitutional and void. The legislature enacted a law for assessing and taxing railroads, in one section of which was the following clause: ‘But such schedule * * * shall not include nor value embankments, tunnels, cuts, ties, trestles, or bridges.’ * * *
 

 “In Fox’s Appeal, 112 Pa. 337, 4 A. 149, * * * a section of the Revenue Law of the state of Pennsylvania was held unconstitutional and void under the provisions of the constitution of that state, which are also quite similar to our own; The section of the statute provided ‘that notes or bills for work or labor done’ should be exempt. Mr. Justice Paxton, in delivering the opinion of the court, says: ‘The exception of “notes or bills for work or labor done” is clearly a violation of article 9 of the constitution. This belongs to a species of class legislation that has become very common, —more common than commendable, — the object of which is to favor a particular class at the expense of the rest of the community. So far as such legislation affects the question of taxation, the constitution
 
 *64
 
 has put an end'to it. There can be no more of it; nor should there be. The constitution protects all classes alike. The poor and the rich equally enjoy its benefits, and all must share the burdens which it imposes. However popular such legislation may be, it cannot be sustained under our present constitution. But for this vice we are not required to declare the act of 1885 void. The second section of article 9 of the constitution provides: “All laws exempting property from taxation, other than the property above enumerated, shall be void.” The exception' of “notes or bills for work or labor done”-is void under this provision, and drops out of the Act of 1885.’ ”'
 

 In the matter of In re Assessment of Walters National Bank, 100 Okl. 155, 228 P. 953, the State statute allowed banks to deduct from the assessed valuation of their stock, the amount.of public building bonds owned by them. The Board of Equalization refused to allow this deduction on the ground that it contravened and was in conflict with that section of the Constitution prohibiting and limiting exemptions from taxation. The deduction was treated as an exemption. However, the court held that it was an allowable exemption, because the public building bonds were not property within the purview of the taxing statutes but were instrumentalities of government properly within the legislative power to exempt.
 

 In City of Jackson v. Deposit Guaranty Bank & Trust Co., 160 Miss. 752, 133 So. 195, a Mississippi statute exempted the surplus of banks from taxation until outstanding guaranty certificates were liquidated. Another Mississippi statute provided that, for the taxation of banks and banking capital, only the shares should be taxed according to their value, augmented by the accumulations of surplus and unpaid dividends, exclusive of real estate. The State of Mississippi had a compulsory guaranty fund to which all banks had to make contributions for the protection of depositors in failing banks. Due to the heavy burdens on the guaranty fund following the bank crashes in 1929 and 1930, the exemption statute- in question was passed in order to permit banks to replenish the fund and discharge the guaranty certificates. The court held that the exemption was valid under the laws of the State of' Mississippi, because the power of the Legislature to -exempt from taxation was no longer an open question, as there was no constitutional prohibition, the only limit being that the exemption should not be arbitrary. The court held definitely that the exclusion of the surplus was an exemption.
 

 In Martin v. High Splint Coal Co., 268 Ky. 11, 103 S.W.2d 711, it was decided that the mere right to “classify” for the purpose of taxation does not embody or include the ri^ht to exempt from taxation, when there are constitutional provisions against such exemptions. The pertinent constitutional provision, Cónst.Ky. § 171, reads: “The general assembly shall have power to divide into classes and to determine what class or classes of property shall be subject to local taxation.” The defendant contended that this necessarily implied a right to exempt. The court held to the contrary.
 

 
 *66
 
 In Cooley on “Taxation,” Volume 1, Section 273, page 580, it is stated: “In most states the provision as to equality and uniformity is held to preclude the legislature from either expressly exempting part of the property from taxation or accomplishing the same result by failure to tax such property. * * * ”
 

 The Legislature having expressly stated that the surplus, undivided profits, and contingent reserves, up to 100% of the par capital of the bank were not subject to the tax, necessarily placed these amounts of the surplus, undivided profits, arid contingent reserves, in the category of exemptions to that extent. From the foregoing authorities,' it is obvious that whether an exemption be called a deduction or an allowance is of no moment, for if it is, in fact, an exemption, or is equivalent to an exemption, then the act granting the same violates the constitutional provision against exemptions not enumerated therein.
 

 To maintain that an exemption resulting from a formula or a mode for the assessment valuation or the computation of the tax is not an exemption, would be, in effect, holding that the exemption clause of the Constitution above referred to places no limitation upon the power and authority of the Legislature to exempt property from taxation. In short, if this method of legislative procedure were sanctioned by the courts, the constitutional prohibition against exemptions would be in practical operation eliminated from the Constitution. This result we cannot countenance, because it would be contrary to both the letter and the spirit of the constitutional provision in question. As we see this case, it is not a situation where there is difference or variation in effect upon the taxpayers in the administration of the statute, due to a classification of the subject sought to be taxed, but an exemption of taxable property from taxes by the very terms of the act.
 

 Counsel for the plaintiffs point out that Section 1 of Article 10 of the Constitution of
 
 1921,
 
 provides: “ * * * all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax * * *. No property shall be assessed for more than its actual cash value, * * *. ” They then stress the fact that this section and article was amended on November 6, 1934, and now reads : “ * * * All taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax * * *. No
 
 property shall be assessed for more than its actual cash value, ascertained as directed by law
 
 * * *. ” (Italics ours.)
 

 Conceding, only for the purpose of explanation and illustration, that the Legislature, under the above provision of the Constitution, is authorized to pass laws taxing property not to the full amount of its full actual cash value, let us determine if this would lead to a conclusion favorable to the plaintiffs. They contend that, since the law was changed, the Legislature was vested with authority to place taxes on •property not exceeding its real or actual value and, consequently, it has the power to refrain from taxing up to the full value of
 
 *68
 
 the bank’s stock, surplus, undivided profits and contingent reserves, and that the method employed in the instant case in arriving at the assessment or value of the stock was sanctioned by the above amendatory provision of the Constitution.
 

 There is no doubt that the Legislature is authorized to impose taxes, but it is equally dear 'that the Legislature is prohibited from granting- exemptions from taxes on taxable property. It is clear to our mind that the method employed by the Legislature in making the tax applicable only after the surplus, undivided profits and contingent 'reSérves exceed the par value of the capital' stock grants the taxpayer an 'exemption. If the Legislature is held to have the power under the Constitution, as a mere formula or' method '.for assessment .valuation and taxation, to state that the taxpayer shall be assessed upon the value of his property, after it exceeds a certain amount, then the Legislature by placing that amount sufficiently high could grant the exemptions at will. For example, it took a constitutional amendment .to grant homestead exemptions from taxation up to the amount of $2,000. If the theory of the plaintiffs is correct, the Legislature would have authority, without constitutional amendment., to provide that homes constitute a separate class for the purpose of assessment and the value, of the property for both State and local assessment purposes would be predicated upon the amount which the- assessment value exceeds the sum of $2,00Q.. The only reason'why the-amount of the exempt tion is not stated in dollars and cents in Section 4 of No. 14 of 1917, Ex.Sess., as amended by Act 172 of 1938 is because the amount of the exemption was based upon the par value of the capital stock of each bank and, of course, those figures vary in each particular case. The above demonstrates the lack of merit in this point.
 

 It is stated by the plaintiffs that it is obvious that the provisions of Act 172 of 1'938 were to encourage banks throughout the State to build up their surplus, undivided profits and contingent reserves, and that this was a wise and wholesome exercise of the police power for conservative and sound bánking practice and stable public policy. Of course, the Legislature cannot exercise its authority no matter how wholesome and wise its actions may be, if its actions are contrary to and in conflict with the provisions of the fundamental law of the State. Furthermore, Act 65 of 1900, regulating banks, provides for a surplus of 20% of the capital, and if the Legislature, as a matter of public policy, conside-ed that the banks should have a greater surplus, in order to avoid future bank failures, it can amend the statute so as to require a surplus of 50%, or as much as 100% of the par value of the capital stock, but it could never provide for the exemption' of such a surplus without a constitutional amendment.
 

 It is to be noted that in Section 4 of Article 10 of the Constitution, where a detailed list of property exempted from taxation is contained, that the legal reserves of life insurance companies is exempt from taxation. Were it a matter of urgent public policy to exempt the surplus,
 
 *70
 
 undivided profits and contingent reserves of banks, such exemption would have been so listed originally in Section 4 of Article 10 of the Constitution or, subsequently, by amendment. Again, we must bear in mind that, while the assessment is apparently against the bank, the statute (Sec. 1, Act 172 of 1938) provides:
 
 “
 
 * * * All taxes so assessed against the shares of stock shall be paid by the bank
 
 * * *
 
 or corporation engaged in the banking business direct, and it shall be entitled to collect the amount thus paid from the shareholders or their transferees.”
 

 The plaintiffs have referred us to the case of Merchants & Mfg. Bank v. Pennsylvania, 167 U.S. 461, 17 S.Ct. 829, 42 L. Ed. 236. That case is in point only on the issue of uniformity. The question of exemption from taxes was .not even discussed there.
 

 It is our opinion that Act 172 of 1938 is unconstitutional, null and void, being violative of Section 4 of Article 10 of the Constitution of
 
 1921,
 
 as amended, in that it grants an unauthorized exemption.
 

 Our conclusion on the above question makes it unnecessary for us to consider the issue of unconstitutionality due to an alleged lack of uniformity, in violation of Section 1 of Article 10 of the Constitution of 1921, as amended.
 

 For the reasons assigned, the judgment of the district court is annulled and set aside, and it is now ordered, adjudged and decreed that the plaintiffs’ suits be dismissed at their costs.
 

 O’NIELL, C. J., dissents.