129 So.2d 840 (1961)
HIGGINS, INC.
v.
Richard E. WALKER, Administrator, Division of Employment Security, Department of Labor, State of Louisiana.
No. 5216.
Court of Appeal of Louisiana, First Circuit.
April 10, 1961.
Rehearing Denied May 22, 1961.
Certiorari Denied June 22, 1961.
*841 Richard B. Montgomery, Jr., New Orleans, Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, for appellant.
Marion Weimer, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, JONES and LANDRY.
LANDRY, Judge.
This appeal was taken by plaintiff, Higgins, Inc., from the judgment of the Nineteenth Judicial District Court, Parish of East Baton Rouge, dismissing appellant's suit for recovery of unemployment compensation taxes in the sum of $145,500, reputedly paid through error to Richard E. Walker, Administrator, Division of Employment Security, Department of Labor, State of Louisiana (hereinafter referred to simply as the "Administrator" or "Division of Employment Security"), pursuant to the provisions of the Louisiana Employment Security Law, LSA-R.S. 23:1471 et seq., during the years 1950-1953, inclusive.
The events and circumstances culminating in this litigation are not disputed between the parties. We believe, however, a clearer understanding of the positions of the respective litigants will be afforded by a *842 chronological narration of the occurrences which prompted the institution of this suit.
It appears that in early 1946, plaintiff, Higgins, Inc., was chartered as a Louisiana corporation having its domicile in Orleans Parish and commenced operation under said corporate name after having purchased more than 90% of the assets of the corporation formerly known as Higgins Industries, Inc.Higgins Industries, Inc. in Liquidation. On June 14, 1946, plaintiff filed with defendant Administrator a status report required of every employer pursuant to the provisions of LSA-R.S. 23:1539, wherein plaintiff expressly stated it was not a "successor" employer. Predicated upon said status report, the Administrator classified plaintiff as a new employer, subject as such to payment of maximum employer's contribution rate (tax) in the amount of 2.7% of plaintiff's payroll as provided for in LSA-R.S. 23:1531 et seq. Thereafter plaintiff paid unemployment contributions at the maximum rate for a period of approximately seven years or until May 15, 1953, on which date plaintiff made application to the Administrator for a refund of alleged excess contributions paid during the three-year period next preceding May 15, 1953, said application being predicated on the premise plaintiff, as successor to Higgins Industries, Inc. in Liquidation, was entitled to the benefit of the experience rating applicable to and credit accumulated by plaintiff's predecessor. In this regard, plaintiff alleges (and it is conceded in defendant's brief) that plaintiff characterized itself a new corporation on the previously mentioned status report solely and only because the Federal Securities and Exchange Commission had previously insisted upon so classifying plaintiff for the purpose of sale of some 900,000 shares of stock plaintiff proposed to offer for sale and plaintiff's representatives thereafter erroneously believed it was necessary to so represent the corporation on the status report in question. In addition, defendant's brief acknowledges that Higgins Industries, Inc. in Liquidation had, during the war years, paid unemployment taxes considerably in excess of benefits paid its employees and charged to its experience rating records and was, therefore entitled to credit of considerable proportions.
Defendant further concedes that subsequent to plaintiff's application for refund, namely, on July 24, 1954, defendant Administrator's predecessor in office redetermined plaintiff's tax rate and concluded plaintiff was, in fact, a "successor" and, as such, thereafter entitled to the benefit of the experience rating of plaintiff's predecessor, Higgins, Industries, Inc. in Liquidation. The previous Administrator, however, refused to make his findings retroactive to prior years because plaintiff had in its original status report voluntarily classified itself as a non-successor but notwithstanding his denial of plaintiff's entitlement to a refund, he nevertheless made a redetermination wherein plaintiff was refunded the excess paid in employer contributions for the year immediately preceding plaintiff's application of May 15, 1953.
Plaintiff filed the initial suit August 2, 1955 (more than one year subsequent to the Administrator's redetermination of July 24, 1954), seeking recovery of the excess tax paid for the remaining two years of the three-year period next preceding its application for reimbursement.
Plaintiff's petition, as supplemented and amended, prays that it be granted either form of relief requested in the following alternative order: (1) That an alternative writ of mandamus issue directing the Administrator to transfer the experience rating records and credit of Higgins Industries, Inc., in Liquidation to plaintiff as successor of said Higgins Industries, Inc., in Liquidation and pay plaintiff the balance of the refund, in the sum of $145,500 due for the remainder of the three-year period immediately preceding plaintiff's application of May 15, 1953; (2) That a writ of mandatory injunction issue ordering the Administrator to credit plaintiff with the experience rating of plaintiff's alleged *843 predecessor and pay plaintiff said sum of $145,500; (3) That there be judgment in favor of plaintiff and against defendant Administrator recognizing and decreeing that plaintiff is entitled to the benefit of the experience rating of its alleged predecessor and to said claimed refund of $145,500; and (4) That there be judgment in favor of plaintiff and against defendant Administrator in the sum of $145,500 to be paid out of funds accumulated by the State of Louisiana as custodian of funds received by the Administrator pursuant to the provisions of LSA-R.S. 23:1551 (which provides for the refund of taxes erroneously paid).
On motion of defendant the learned trial court issued a rule nisi ordering plaintiff to show cause why plaintiff should not be required to elect a specific remedy herein. The aforesaid rule was made absolute by the trial court and in obedience thereto plaintiff chose to proceed by way of application for a mandatory injunction ordering defendant to make the refund claimed. Following plaintiff's aforesaid election, defendant excepted to the jurisdiction of the trial court ratione materiae on the ground the proper forum for adjudication of plaintiff's claim is plaintiff's domicile, namely, Orleans Parish, for the reason LSA-R.S. 23:1541(4), which defendant contends is decisive of the issue at hand, expressly provides such action must be brought at the domicile of the contributing employer. The trial court sustained defendant's exception to the jurisdiction ratione materiae and dismissed plaintiff's suit, from which ruling the appeal herein is taken.
Defendant Administrator contends that in substance plaintiff herein is seeking redetermination of a fixed contribution rate. He further asserts an employer's right to reconsideration of an established rate is governed exclusively by LSA-R.S. 23:1541(4), which provides that a tax rate once determined becomes conclusive and binding unless the employer within 20 days of mailing of notice thereof or in the absence of mailing within 15 days after delivery of such notice files application for review and redetermination thereof. Defendant further maintains that the same presumption of conclusiveness of rate applies to the determination rendered July 29, 1954, pursuant to which plaintiff was held entitled to transfer of the experience rate of Higgins Industries, Inc. in liquidation and plaintiff, having failed to invoke judicial review thereof within 20 days is now precluded from further action with respect thereto. The statutory provision relied upon by the Administrator, namely, LSA-R.S. 23:1541(4), reads in full as follows:
"§ 1541(4) The administrator shall promptly notify each employer of his rate of contribution as determined for any experience-rating year pursuant to this Section. This determination shall be conclusive and binding upon an employer unless within 20 days after the mailing of notice hereof to his last known address, or in the absence of mailing within 15 days after the delivery of such notice, the employer files an application for review and redetermination, setting forth his reasons therefor. If the administrator grants such review, the employer shall be promptly notified thereof and shall be granted an opportunity for a fair hearing, but no employer shall have standing, in any proceeding involving his rate of contribution or contribution liability, to contest the chargeability of any benefits to his experience-rating record as to cases wherein he has previously been notified and had an opportunity for hearing, review and appeal.
"The employer shall be promptly notified of the administrator's action which shall become final unless within 20 days after the mailing of notice thereof to his last known address or in the absence of mailing within 15 days after the delivery of such notice a petition for judicial review is filed in the district court of employer's domicile. *844 In any proceeding under this paragraph the findings of the administrator as to facts shall be presumed to be prima facie correct if supported by substantial and competent evidence. These proceedings shall be heard in a summary manner and shall be given precedence over all other civil cases except cases arising under Part VI of this Chapter and Chapter 10 of this Title. An appeal may be taken from the decision of the district court in the same manner, but not inconsistent with the provisions of this Chapter as in other civil cases." As amended Acts 1954, No. 503, § 2.
On the other hand, plaintiff argues its suit is in essence a demand for refund of contributions erroneously paid which action may be instituted within three years of date of payment in conformity with LSA-R.S. 23:1551, which, in its entirety, reads as follows:
"§ 1551. If not later than three years after the date of payment of any amount as contributions, interest, or penalties, an employing unit which made such payment shall make application for an adjustment thereof in connection with subsequent contribution payments, or for a refund thereof because such adjustment cannot be made, and the administrator shall determine that such contributions or interest or penalties or any portion thereof were erroneously collected, the administrator shall allow such employing unit to make an adjustment thereof, without paying interest upon the same, in connection with subsequent contribution payments by it, or if such adjustment cannot be made the administrator shall refund said amount, without interest upon same from the unemployment compensation fund. For like cause and within the said period, adjustment or refund may be so made on the administrator's own initiative.
"If, not later than three years from the date on which administrative error is committed, the error is discovered and called to the attention of the administrator, he shall, on his own motion or upon the request of any interested party, take all necessary steps that he may deem necessary to correct and rectify the said error; provided, however, that any interest, fine or penalty refunded under this Section which has been paid into the special unemployment security administration fund established pursuant to R.S. 23:1513 shall be paid out of such fund. Provided, further, that the administrator shall be without authority to make any adjustment or correction which will increase the contribution of any employing unit unless such adjustment or correction is made within twelve months of the occurrence of the administrative error.
"This Section, as amended, shall take effect when this law has been signed and promulgated and shall apply to all pending cases as well as all future cases. As amended Acts 1952, No. 447, § 1.
Plaintiff concedes that if its rights herein are controlled by Sec. 1541(4) as contended by defendant Administrator (which, of course, plaintiff denies), defendant's exception to the jurisdiction ratione materiae was properly sustained by the trial court inasmuch as plaintiff acknowledges a suit for redetermination of a fixed rate must be filed at the domicile of the employer under the express venue provisions of Sec. 1541 (4) as hereinabove set forth.
From the foregoing, it is evident the primary issue herein is which of the two seemingly contradictory provisions of our unemployment compensation law is applicable to the matter before us. In this connection, it must be determined whether plaintiff's application of May 15, 1953 is basically an application for redetermination of a fixed rate and, therefore, barred *845 by the 20-day prescriptive period provided for in Sec. 1541(4) or whether it is a suit to correct error and recover a tax erroneously paid which latter action is prescribed only by the period of three years according to the express provisions of Sec. 1551.
Defendant contends that to hold as plaintiff suggests is to subject the Administrator's rate determination to question for a period of three years, thereby writing out of the law the 20-day prescriptive period contained in Sec. 1541(4). Finally, defendant contends Sec. 1551 is general in nature considering it covers the entire fields of refund and correction of administrative error whereas Sec. 1541(4) is specific in nature governing solely the finality and conclusiveness of tax rates determined by the Administrator. From this latter premise defendant reasons that a refund being contingent upon a reduction in rate, there can be no refund in the absence of a right to redetermination of rate and in the instant case, plaintiff no longer enjoys such right because of its failure within 20 days to request review of the determination of May 29, 1954.
Obviously, as plaintiff contends, to hold as defendant advocates, is to emasculate Sec. 1551 and the right to recover taxes erroneously paid within three years of payment as therein expressly provided. According to plaintiff a fair reading of the act in its entirety (especially Sec. 1551) discloses the clearly expressed legislative intent to permit correction of errors, the granting of refunds and the making of fair and equitable adjustments within three years of the discovery of the error or payment of the amount claimed as refund.
The issue thus presented to us is a matter of first impression quoad the jurisprudence of this state. In our view, resolution of the question involved herein must be made in the light of certain fundamental legal concepts which, in our judgment, appear peculiarly apropos the matter under consideration.
It is a well established rule of statutory interpretation that courts are bound, if possible, to give effect to all parts of the statute and no section, clause or word shall be considered as unmeaning or surplusage if reasonable legitimate construction can be found which will give effect to and preserve the statute in its entirety. State v. Fontenot, 112 La. 628, 36 So. 630; Downs v. Drew, 166 La. 439, 117 So. 454; Hibernia National Bank in New Orleans v. Louisiana Tax Commission, 195 La. 43, 196 So. 15; Poole v. Merritt, La.App., 19 So. 2d 641; City of Gretna v. Aetna Life Ins. Co., 206 La. 715, 20 So.2d 1; Barnett v. Sewerage & Water Board of New Orleans, La.App., 51 So.2d 634; State ex rel. Barre v. Fulton, La.App., 63 So.2d 21.
It must also be presumed the legislature intended the provisions of both Section 1541(4) and Section 1551 to have some meaning and serve some purpose. It is well settled law that this court may not interpret either in such manner as to obliterate the other if the sections may otherwise be reasonably construed. Post Office Employees' Credit Union of New Orleans v. Morris, 192 La. 891, 189 So. 566; Shreveport Armature & Electric Works v. Harwell, La.App., 172 So. 463; and Bolinger Gain-Yay, Inc. v. Harwell, La.App., 172 So. 471.
The general intent of a law is the key to the whole statute and controls interpretation of the various parts as evidenced by the following statement of law found in Am.Jur. Volume 50, Page 350:
"Hence, a statute should be construed in its entirety, and as a whole. The general intention is the key to the whole act, and the intention of the whole controls the interpretation of its parts. * * * All parts of the act should be considered, compared, and construed together. It is not permissible to rest the construction upon any one part alone, or upon isolated words, phrases, clauses, or sentences, or to give undue effect thereto."
*846 Unquestionably the contributions paid by employers pursuant to the annual rate determination called for in LSA-R.S. 23:1536 are taxes. In considering a similar unemployment compensation statute in the State of Alabama, the United States Supreme Court in Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, characterized such contributions as a tax upon the right or privilege of employing individuals, held it within the state's constitutional taxing authority and declared immaterial its designation as an excise tax or other tax classification. Although the court in the case of Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407, dismissed the action for a declaratory judgment, for other reasons, it characterized the employer payments under the Louisiana Unemployment Compensation Statute (under consideration here) as an excise tax, upon the exercise of the right or privilege of employing individuals, measured by a percentage of wages paid. The same conclusion was reached in the State of Pennsylvania in Bowman v. Department of Labor and Industry of the Commonwealth of Pennsylvania, 60 Dauph. Co. 310. We concur with the foregoing authorities and hold that the contributions exacted of an employer under the provisions of the statute in question are in fact taxes and must be treated and considered as such.
Having arrived at the conclusion plaintiff herein is seeking a tax refund we must also bear in mind the general rule which holds that taxation laws must be liberally interpreted in favor of the taxpayer and strictly construed against the levying authority with any doubt or ambiguity therein being resolved and construed in favor of the taxpayer. State v. State Agricultural Credit Corporation, 176 La. 590, 146 So. 159; State v. Bisso Realty & Investment Co., 184 La. 579, 167 So. 87; State v. Standard Oil Co. of Louisiana, 188 La. 978, 178 So. 601.
It must also be borne in mind that if a tax statute is susceptible of more than one reasonable interpetation the construction less onerous to the taxpayer must be adopted. State v. Standard Oil Co. of Louisiana, supra; Hibernia National Bank in New Orleans v. Louisiana Tax Commission, 195 La. 43, 196 So. 15; and Rathborne v. Collector of Revenue, 196 La. 795, 200 So. 149.
As hereinabove previously stated the question at hand appears res nova so far as the jurisprudence of this state is concerned. However, the identical question has been considered by the courts of Pennsylvania and Ohio which said tribunals have expressed conflicting views and rendered divergent opinions in construing similar statutes adopted by their respective legislatures.
In Acme Engineering Co. v. Jones, 150 Ohio St. 423, 83 N.E.2d 202, 203, The Supreme Court of Ohio indulged in a strict construction of a provision similar to our Title 23:1541(4) and in effect that the remedy of an employer to recover a contribution erroneously paid lay exclusively thereunder.
On the other hand, in Hotel Casey Co. v. Ross, 343 Pa. 573, 23 A.2d 737 and Bowman v. Department of Labor and Industry of the Commonwealth of Pennsylvania, 60 Dauph. Co. 310, the Pennsylvania court held contrary to the ruling of the Ohio court in the Acme Engineering Company case, supra. In the Bowman case, supra, the Pennsylvania court had before it a factual situation and statute identical to the case at bar and ruled that a tax similarly collected was in fact erroneously paid; that the statute should be strictly construed; that an act of the legislature should not be construed so as to work an injustice and finally, that a tax erroneously collected should, if possible under the statute, be refunded. In reaching its decision the Pennsylvania Court construed an identical statute as granting the taxpayer a dual remedy, otherwise a harsh, strained meaning never intended by the Legislature would result. The court, in the Bowman case, supra, discussed *847 the ruling of the Ohio Court in the Acme Engineering Company case, supra, and considered the rule of "unfortunate hardship" announced by the latter as being too rigid an interpretation of the law and declined to sanction such a strict interpretation.
Our learned brother below held that because the rate determination herein involved was initially made upon the specific representation of plaintiff, the tax was not erroneously collected but purposely fixed and therefore Section 1551 was not applicable. He further concluded Section 1541(4) divested the court of jurisdiction ratione materiae inasmuch as the time therein allotted for appeal had expired.
The interpretation indulged in by the esteemed trial court in effect interpolates the defense of estoppel which, in our judgment, results in limiting and restricting the words "erroneously collected" as used in Section 1551 to mean errors committed only by the Administrator. We believe such a result plainly contrary to the general intent of the statute under consideration. While the second paragraph of Section 1551 does indeed refer to the correction of administrative error, the first paragraph thereof unmistakably refers to all errors including, we believe, errors made by a contributing employer as well as those on the part of the Administrator. In the language employed, we detect nothing indicative of legislative intent to restrict the right to relief from error to correction of adminstrative error only. The right to relief is not dependent upon whether the department computed the tax correctly on the basis of available information but whether the tax was, in final analysis, correct. If plaintiff is in fact a successor (which defendant seems to concede) and entitled to the benefit of the experience rating of its predecessor, then the excess charges predicated upon a less favorable experience rating were collected in error and, pursuant to the provisions of Section 1551, plaintiff is entitled to seek recovery thereof within the three-year period specified therein. In this connection we note that Section 1539 provides a successor "shall" be entitled to the experience rating of its forerunner. Unquestionably, use of the word "shall" characterizes said provision as mandatory as distinguished from permissive. Being mandatory in nature, failure to comply therewith is error notwithstanding it being occasioned by the inadvertence of the employer.
It is the contention of defendant that use of the words "conclusive and binding" appearing in Section 1541(4) indicates that a rate once determined is to be considered final unless the employer appeals therefrom within 20 days and may never again be reconsidered or redetermined even in connection with a claim for refund predicated upon alleged error therein.
Considering all provisions of the statute, we believe such construction was not intended by the legislature. It cannot be seriously argued that in ordinary usage the words "final", "conclusive" and "binding" denote permanence, irrevocability and perpetuity. We believe, however, that use of said words in Section 1541 of the statute under consideration was intended to mean something less than final, binding and conclusive within the usual meaning of said words considering the first paragraph of Section 1551 clearly requires annual redetermination of rates, which, according to defendant, having been fixed and permitted to become final, may never again be redetermined. The effect of the act as a whole is to make the rate final for a period of one year only following which there must be a redetermination thereof under the terms of the statute itself.
Despite the apparent conflict, we believe the sections of the statute are compatible in that the legislature thereby intended to provide a dual remedy in the event of collection of excess employer contributions due to an error in rate. Under Section 1541(4), the employer may, within 20 days, contest the rate before it becomes *848 binding and collectible. Failing to avail himself of this remedy, he may not refuse to pay the tax for error or otherwise but must pay the determined rate until the following annual redetermination date. To say that the employer loses the right to contest the rate he must pay until the succeeding rate determination date, does not necessarily mean loss of his right to demand refund of excess tax included in said rate and paid in error as clearly provided by Section 1551. We believe the legislature intended that having permitted the rate to become final, he is thereafter relegated to the remedy afforded by Section 1551 and must seek recovery of any tax erroneously paid within the three-year period stipulated by the latter section. As thus construed we believe the sections are both attributed a definite purpose and enjoy a compatibility which ascribes meaning to both. In addition, we note that Article 10, Section 18, Louisiana Constitution of 1921, LSA, provides as follows:
"Article 10, Section 18. Collection of taxes; process to restrain; refunds.
"Section 18. The Legislature shall provide against the issuance of process to restrain the collection of any tax and for a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him."
In compliance with the foregoing constitutional mandate, the legislature of this state has provided adequate remedy for refund of taxes collected by other means, for example LSA-R.S. 47:1576, 1621-1625, applicable to taxes collected by the Collector of Revenue, and LSA-R.S. 47:2108-2110 (relative to ad valorem taxes). In the statute under consideration, Section 1551 is the only provision which may be said to afford the taxpaying employer an adequate remedy for refund of taxes paid in error pursuant to the provisions of LSA-R.S. 23:1471 et seq.
Surely the legislature did not intend to penalize this particular class of taxpayers and must be presumed to have intended that persons and corporations subject to the particular tax herein involved would be afforded the right to recover taxes erroneously paid under circumstances similar to those granted taxpayers in other categories. The three-year prescriptive period provided by the legislature in Section 1551 appears consistent with the time limitation governing refund of other taxes. See LSA-R.S. 47:1623.
The argument of learned counsel for defendant Administrator that to hold the three-year prescriptive period applicable and thus permit redetermination of rates subsequent to expiration of the 20-day period provided in Section 1541(4), is tantamount to subjecting rate determination to attack for a period of three years thereby imposing an undue burden upon defendant, is without merit in the premises. The burden thus imposed upon the Administrator is no greater than that imposed upon any other collector of taxes whose obligation it is to refund a tax paid through error.
It follows, therefore, plaintiff's action was properly brought under LSA-R.S. 23:1551 and the trial court erred in sustaining defendant's exception to the jurisdiction ratione materiae.
It is, therefore, ordered, adjudged and decreed that the judgment of the trial court be reversed and this matter remanded to the court below for further proceedings consistent with the views herein expressed.
Reversed and remanded.
HERGET, J., recused.