LANDRY, Judge.
This is an appeal by A. J. Buquet, Member Louisiana Wild Life and Fisheries Commission (sometimes hereinafter referred to simply as the “Wild Life Commission”), from an order of the Louisiana Commission on Governmental Ethics (sometimes hereinafter referred to simply as the “Ethics Commission”), directing the Honorable *291 John J. McKeithen, Governor of Louisiana, to remove appellant from his aforesaid public office because of an alleged violation of the recently enacted code of ethics for governmental affairs in the State of Louisiana, more precisely LSA-R.S. 42, Chapter 15, Sections 1101-1122, inclusive, incorporated into our revised statutes pursuant to Act 110 of the Regular Session of the 1964 Legislature. Appellate jurisdiction is vested in this court pursuant to the provisions of Louisiana Constitution Article 19, Section 27, Paragraph 1, C(3).
In conformity with authority contained in LSA-R.S. 42:1121, the Ethics Commission “ordered that, the Governor remove A. J. Buquet from his public office as member of the Louisiana Wild Life and Fisheries Commission if the leases with the Wild Life and Fisheries Commission which he or corporations of which he is a stockholder presently hold are not terminated immediately.”
This court granted a stay order pending the present appeal inasmuch as the instant controversy presents an initial consideration of what is obviously a matter of paramount public concern.
It is conceded by the parties that only a question of law is involved herein. Put in its simplest form, the sole question before the court is whether the newly adopted Code of Ethics prohibits the leasing of state owned water bottoms for oyster fishing from the Wild Life Commission by a member of that agency or, stated otherwise, does the aforesaid activity by a member of the Wild Life Commission per se constitute a violation of the Code of Ethics, more particularly Section 1117 D, Title 42 LSA-R.S., which reads as follows:
“No member of any board or commission appointed by the Governor with or without the consent of the Senate shall participate in any transaction involving the board or commission on which he serves in which he, his spouse or child, or any person of which he is an officer, director, trustee, partner or employee has a substantial personal economic interest, as distinguished from that of a general class or general group of persons, of which he may be reasonably expected to know.”
Pursuant to authority contained in LSA-R.S. 42:1101 et seq., the Ethics Commission held a private hearing on May 19, 1965, to investigate the violation herein charged. As provided by the statute, such private hearings are secret, and no action against an employee, state official or other person may result therefrom. The intent of the hearing was to make a preliminary determination whether Mr. Buquet was in violation of the code. Following the aforesaid private hearing, the Ethics Commission issued an Advisory Opinion, dated June 21, 1965, informing appellant that he was in violation of the code but appellant made no response thereto. Neither did appellant reply to the letter of the Ethics Commission of date July 23, 1965, requesting that appellant advise the Ethics Commission of the action appellant intended to take as a result of the aforesaid finding of a violation. Appellant’s silence prompted the Ethics Commission to institute proceedings against him pursuant to which written notice was mailed appellant advising that a public hearing on the matter would be held September 8, 1965 (at a specified time and place), “to determine whether your holding a membership on the Wild Life and Fisheries Commission and your leasing of water bottoms which comes under the ju-, risdiction of the Commission of which you are a member constitutes a violation of the Code of Ethics.”
On August 19, 1965, Mr. Buquet filed a motion for a copy of the written complaint as provided by LSA-R.S. 42:1119 D (5) (a) and for a bill of particulars. In response thereto the Ethics Commission’s attorney by letter dated August 26, 1965, informed appellant’s counsel that the scheduled hearing was initiated by the Ethics Commission under the alternative procedure authorized by LSA-R.S. 42:- *292 1119 D(5) (b), on its own motion and without a written complaint having been filed by a qualified elector. The aforesaid letter further stated:
a jjc
Insofar as the records of the Commission are concerned, there has been no sworn complaint against Mr. Buquet filed under the provisions of R.S. 42:-1119 [D] (5) (a). The public hearing scheduled in connection with this investigation by the Commission was initiated under the authority vested in the Commission by R.S. 42:1119 [D] (5) (b).
According to the resolution initiating the public hearing in this investigation, the only matter to be resolved by the Commission is whether the holding of membership on the Wild Life and Fisheries Commission by Mr. Buquet while at the same time holding leases of water bottoms which come under the jurisdiction of the Commission constitutes a violation of the provisions of R.S. 42:1117, particularly Sub-section [D] (d). The public hearing by the Commission is to determine whether the mere fact of holding leases, regardless of date obtained, by a member of the Commission either in his individual capacity or by a corporation of which he is a stockholder constitutes a violation of the aforementioned section of the Code of Ethics.
With regard to any other information in the Commission’s files and minutes concerning this investigation, I would prefer that these matters be presented in evidence at the public hearing rather than in response to a reply to a Bill of Particulars because of the provisions of R.S. 42:1121.
* * * ”
Subsequently appellant moved that he be furnished with a copy of the resolution of the Ethics Commission instituting the present proceeding, and for a bill of particulars. Appellant also filed a demurrer and motion to dismiss the proceeding on the ground the activities specified, in the complaint do not constitute a violation of the ethics code. Mr. Buquet’s demurrer and motion to dismiss also contends, as a matter of law, the complaint does not charge an offense and should also be dismissed because of the failure of the Ethics Commission to respond to his motion for a bill of particulars and its failure to include in the notice information sufficient to fully apprise him of the nature of the charges against him.
The Louisiana Oyster Dealers & Growers Association, Inc., a non-profit corporation, intervened before the Ethics Commission asserting an identity of interest on behalf of its members, and sought to participate as Amicus Curiae in the hearing. We note the issues raised by this intervenor are similar to those posed by appellant, and for all practical purposes will be answered in resolving the issues presented by Mr. Buquet. The Louisiana Wildlife Federation, 'Inc., a non-profit corporation, likewise intervened as Amicus Curiae, expressing confidence in Mr. Buquet and asserting that the constitutional provision creating the Wild Life Commission contemplates the appointment to said commission of persons engaged in activities which the Ethics Commission contends constitutes a violation of the code of ethics. This contention is also raised by appellant and will be discussed in detail hereinafter in this opinion. In this Court another non-profit corporation, namely, American Shrimp Canners Association, has moved for leave to file a memorandum as Amicus Curiae. This latter friend of the court maintains the ruling of the Ethics Commission herein appealed would, if permitted to stand, bar the possibility of one of its members serving upon the Wild Life Commission notwithstanding their eligibility for such service pursuant to the constitutional provision creating the Wild Life Commission.
*293 At the outset we deem it worthy to note that we are not herein called upon to decide the applicability of LSA-R.S. 42:-1117 D with respect to persons or transactions other than those herein specifically involved. We believe it elementary that each alleged instance of violation of the code under consideration must be adjudged in the light of its own particular facts and circumstances, the provisions of the Code of Government Ethics and any other pertinent laws or statutes.
We note in the record a stipulation of facts agreed to by counsel for both appellant and appellee. Inter alia, said stipulation reserves to appellant all rights under his motions previously filed. Appellant re-urges before us his motion for dismissal because of appellee’s failure to respond to the motion for a bill of particulars and also re-argues the merits of his demurrer on the grounds previously mentioned.
In his brief before this court, learned counsel for appellee states in substance that the legislative history of the Code of Ethics reflects that the legislature, as an afterthought, floor amended Act 110 of 1964 to make the rules governing criminal trials applicable in proceedings conducted by the Ethics Commission. Esteemed counsel further argues that except for rules of evidence, application of rules governing criminal causes is virtually meaningless insofar as proceedings before appellee are concerned since such administrative agency is without authority to adjudicate criminal matters. In this same regard counsel maintains that the proper forum for criminal prosecutions is clearly defined in the State Constitution and any criminal prosecution alleging a violation of the Code of Ethics must perforce be instituted by the proper prosecuting officer in compliance with the Code of Criminal Procedure. As we understand counsel’s reasoning, the amendment should be accorded little, if any, weight because the legislature allegedly placed it in the act retrospectively.
We recognize the novelty of the foregoing postulation but likewise note the absence of citation of any authority in support thereof. We disagree with learned counsel for appellee because a provision incorporated into a legislative act whether by inclusion in the bill as initially introduced, or added by amendment subsequently during the legislative process must be accorded the same dignity. The legislative will, expressed in the enrolled bill incorporating all amendments thereto, signed by the presiding officers of both Houses of the Legislature and promulgated as law with or without the Governor’s approval, must be construed as one law whose various provisions possess equal authority and force. It is an elementary principle of statutory interpretation that all parts of a statute must be construed together. We will not, indeed we cannot, presume to label an expression of legislative intent as an afterthought or meaningless action. Moreover, appellee’s, contention that the rules of procedure pertaining to criminal cases have no application-, to proceedings before the Ethics Commission, excepting only rules of evidence,, merely because the Ethics Commission has-no criminal jurisdiction is clearly refuted' by the provisions of LSA-R.S. 42:1148: which reads as follows:
LSA-R.S. 42:1148 Procedure and rules, of evidence for hearings
“Notwithstanding any other provisions of this Chapter, all hearings conducted by the Louisiana Commission on-Governmental Ethics and by the Louisiana Board of Ethics for State Elected" Officials shall be held in accordance-with the rules of procedure set forth in; Title IS of the Louisiana Revised Statutes of 1950, including but not restricted to those rules governing the ad--missability of evidence and all other-rules pertaining to the introduction of and the weight to be given to any evidence. Added Acts 1964, No. 110, §. ’ 1.”
*294 Quite obviously some of the provisions of LSA-R.S. Title IS are inapplicable to proceedings before the Ethics Commission. For example the procedure governing arrest, bail, grand and petit jurors in criminal prosecutions are without application in matters falling within the jurisdiction of the Ethics Commission. Nevertheless, the legislature in its wisdom has seen fit to establish certain safeguards for the protection of a party charged with a violation of the Ethics Code and clearly intended that the provisions of LSA-R.S. Title IS be observed by the Ethics Commission insofar as the rules therein enunciated are applicable and do not conflict with the provisions of the Code of Ethics. It will be readily observed the present proceeding is quasi-criminal in nature with the Ethics Commission serving as accuser, prosecutor and adjudicator. Furthermore, in the instant matter the charge against appellant alleges violation of LSA-R.S. 42:1117, the intentional infraction of which constitutes a misdemeanor punishable by fine and imprisonment in the maximum of $2,000.00 and one year, respectively, upon conviction in an appropriate criminal prosecution. See LSA-R.S. 42:1145.
In view of the foregoing we conclude the provisions of LSA-R.S. Title 15 governing demurrers and motions for bills of particulars apply to proceedings before the Ethics Commission and appellant’s said motion and demurrer should have been received and considered by appellee herein. LSA-R.S. 15:287. We further conclude appellant has the right to re-urge his motions and demurrer on this appeal. We find, however, appellant has not been prejudiced by appellee’s failure to rule on the motions for a bill of particulars. The granting or refusal of such a motion is largely discretionary. State v. Poe, 214 La. 606, 38 So.2d 359; State v. Sheffield, 201 La. 1055, 10 So.2d 894. The accused is entitled to' a bill of particulars only in those instances where particularization of the charge is necessary in order that the defendant may properly prepare his defense. In the instant case we find the letter of August 26, 1965, to appellant’s attorney fully apprised Mr. Buquet of the nature of the accusation against him. Predicated upon the information therein contained, appellant possessed sufficient knowledge to allow proper preparation of his defense to the charge in question.
We believe no useful purpose would be served herein by our separate consideration of appellant’s demurrer. The same issues are presented by the respective positions of the contestants regarding the merits of the instant cause which we shall now proceed to present and adjudicate.
The record contains a rather lengthy “Agreement as to Facts, Legal Issue and Other Pertinent Matters” which in substance reflects that the only matter to be resolved by the Ethics Commission is whether the holding of membership on the Wild Life Commission by appellant, while at the same time, holding leases of oyster water bottoms which come under the jurisdiction of the Wild Life Commission constitutes a violation of the provisions of LSA-R.S. 42: 1117 D. It further recites the hearing is to determine whether the mere fact of holding leases, regardless of the date same were obtained, by a member of the Wild Life Commission, either in his individual capacity or by a corporation of which he is an officer, director or stockholder, violates the aforesaid section of the Code of Ethics of Louisiana.
The stipulation then proceeds to give background information on the Wild Life Commission, pointing out its numerous activities ranging from informational and educational services to the enforcement of all game laws, severance tax collection, research and development of wild life and fish resources for game and commercial purposes. It appears that in execution of its functions the Wild Life Commission employs over 770 classified employees in eight divisions, each presided over by a division chief who is responsible to the Director and the Wild Life Commission. The *295 Division of Oysters, Waterbottoms and Seafood, whose functions include the granting of oyster leases, has a total of 170 employees. Its chief is Dr. Lyle S. St. Amant.
Mr. Buquet served as a member of the Wild Life Commission from February 11, 1953 to May 22, 1956, and was reappointed a member of said body on December 11, 1961, for a term which will expire December 10, 1967. Since his reappointment on December 11, 1961, the only oyster lease acquired by Mr. Buquet or any corporation owned, controlled, or managed by him is a 13 acre plot in Bay Móndese, surveyed upon his application for lease made July 13, 1962.
The above mentioned lease, as well as all others owned by appellant or the family corporations in which he owns stock, were granted by the Wild Life Commission by the identical procedure used in the granting of all other leases, without any preferential treatment being extended or accorded appellant. The traditional procedure followed in the granting of such leases, which the record shows long antedates the existence of the Wild Life Commission itself, consists of awarding oyster leases to the first applicant therefor at a rental of $1.00 per acre per year for 15 years, at the expiration of which time the contract is subject to renewal. The practice employed accords with the provisions of LSA-R.S. 56:421 et seq. as interpreted by those charged with its administration since the statute’s enactment. Dr. St. Amant personally supervises the granting of all oyster leases in conformity with the applicable statute, as a matter of established policy. The stipulation recites that all leases of oyster water bottoms are first .approved by Dr. St. Amant and, if found to be in compliance with applicable law and the rules and regulations of the Wild Life Commission, they are then submitted to the Director who signs the contracts on behalf of the Commission.
Appellant’s family became engaged in the oyster business many years ago when Mr. Buquet’s father obtained leases from various parties. Upon the demise of Mr. Buquet’s said parent, the leases became the property of the widow and children, said leases being heritable and transferrable pursuant to LSA-R.S. 56:429. Appellant’s interest in said leases is an undivided one-tenth thereof. Subsequent leases were acquired by four corporations in which each of the elder Buquet’s five children owns a 20% interest. Four of the children, including appellant, devote their full time to the affairs of the family corporations and family estate. While it has not been specifically shown that appellant is an officer, director, trustee, partner or employee of any of the corporations holding the oyster leases in question, it nevertheless is shown and conceded that appellant has a substantial economic interest in the leases and that the interest thus possessed is personal to appellant as distinguished from a general class or group of persons.
It is acknowledged in the stipulation that at no time while appellant was “serving as a Member of the Louisiana Wild Life and Fisheries Commission has that body undertaken specifically to approve, disapprove, decide upon, recommend, render advice, investigate or perform any act or duty relating to the ownership of the oyster leases owned by A. J. Buquet or any corporation owned or controlled by him.” In addition, appellee concedes that appellant has at no time sought or obtained preferential treatment; nor has he attempted to use his position as a member of the commission to secure an advantage; nor has he abused or misused his authority as a member of the commission in connection with the granting or securing of a lease from appellee.
At this juncture we shall consider appellant’s contention that appellee’s aforesaid order requiring he divest himself of all oyster leases in which he has an interest is unconstitutional in that it deprives him of private property without due process of law in violation of Article 1, Section 2 of the Louisiana Constitution and Amendment XIV, Section 1 of the United States Con *296 stitution. In this respect appellant is correct considering the Code of Ethics clearly provides it shall have no retrospective effect and shall not operate ex post facto. The statute in question expressly states that no action may be taken against a violator who committed the offense prior to the effective date of the Ethics Code. See LSA-R.S. 42:1121 H.
Appellee contends, however, that Mr. Buquet’s alleged violation is a continuing offense and his retention of membership following the effective date of the Code of Ethics constitutes a violation of its provisions for which he may be held accountable.
, Notwithstanding appellee’s unqualified admission that appellant has been guilty of no wrongdoing, it is nevertheless contended on behalf of appellee that:
“The whole thrust of the Code, considering all of the provisions in their entirety, leads us to the conclusion that it was the intention of the Legislature in enacting the Code to prohibit any activity or transaction between an employee or official and the agency he serves wherein specific private interests of the employee or official affect the impartiality and objectiveness of his judgment or decision on any matter coming before him. In essence, the purpose of the Code of Ethics is to protect the integrity of government and instill public confidence therein by prohibiting any activity by a public official •or employee with the agency which employs him which offers the opportunity for or gives the appearance of conflicting interests.”
From the foregoing it appears appellee pitches its case primarily on the premise that despite the complete absence of wrongdoing on appellant’s part, his retention of membership on the Wild Life Com•mission, under the circumstances shown, is .a violation of the Code of Ethics inasmuch .as it presents an apparent or seeming conflict of interests. In this regard appellee contends as follows:
“In our opinion, administration of the statutes of Louisiana pertaining to bi-valves and the bi-valve industry leads us to the inescapable conclusion that the Wild Life and Fisheries Commission legally cannot avoid participating in matters involving leases of water bottoms from the Commission. The Commission has established a special division devoted specifically to this activity. The laws of Louisiana explicitly charge the Commission with the protection of the State’s water bottoms and the administration and enforcement of the laws and rules regulating the oyster industry. It is of no consequence that these duties and responsibilities are carried out by employees of the Commission as the amendment to the Constitution establishing the Wild Life and Fisheries Commission expressly provides for the delegation of these duties and responsibilities. Furthermore, the employees of the Commission act officially only for their employer complying with the duties and assignments delegated to them by the Commission. Consequently, all official actions of employees of the Commission are, in actuality, actions of the Commission itself and its individual members acting together as a governmental body.
The resultant effect of the laws creating the Wild Life and Fisheries Commission vesting in that agency of government the responsibility for the administration of the laws regulating water bottoms of the State with respect to the oyster industry is that the Commission cannot avoid participating not only in the making of such leases but also in the regulation of existing leases.”
Appellant maintains that the activities-of which the Ethics Commission complains herein do not as a matter of law constitute *297 a violation of the Code of Ethics. In this respect appellant contends he is charged with a violation of LSA-R.S. 42:1117 D which provides that no member of a board or commission “shall participate in any transaction involving the board or commission on which he serves, * * *.” Appellant next urges that “participate” as used in the cited statute is defined in R.S. 42:1111 H as meaning “to take part in state action or a proceeding personally as a state employee, through approval, disapproval, decision, recommendation, the rendering of advice, investigation, or the failure to act or perform a duty.” (Emphasis supplied by the Court). Learned counsel for appellant also argues that since appellant is charged with no personal action and appellee concedes no action has been specifically undertaken by it to approve, disapprove, decide upon, recommend, render advice, investigate or perform an act or duty relating to a lease owned by appellant since appellant’s membership on the Wild Life Commission, appellee has failed to establish a violation.
Before proceeding to a resolution of the foregoing contentions of the parties we deem it advisable to set forth certain principles which we believe to be established by the language employed by the legislature in enactment of the statute herein to be interpreted.
The preamble to the statute in question, LSA-R.S. 42:1101, provides as follows:
“§ 1101. Declaration of policy
A.It is essential to the proper operation of democratic government that public officials be independent and impartial; that governmental decisions and policy be made in the proper channels of the governmental structure ; that public office not be used for private gain other than the remuneration provided by law; and that there be public confidence in the integrity of government. The attainment of one or more of these ends is impaired whenever there exists a conflict between the private interests of an elected official or a government employee and his duties as such. The public interest, therefore, requires that the law protect against such conflicts of interest and establish appropriate ethical standards zvith respect to the conduct of elected officials and government employees in situations where conflicts exist. (Emphasis ours.)
B. It is also essential to the proper operation of government that those best qualified be encouraged to serve the government. Accordingly, legal safeguards against conflicts of interest must be so designed as not unnecessarily or unreasonably to impede the recruitment and retention by the government of those men and women who are best qualified to serve it. An essential principle underlying the staffing of our governmental structure is that its elected officials and employees should not be denied the' opportunity, available to all other citizens, to acquire and retain private economic and other interests, except where conflicts with the responsibility of such elected officials and employees to the public cannot be avoided.
C. It is the policy and purpose of this Chapter to implement these objectives of protecting the integrity of the government of this state and of facilitating the recruitment and retention of qualified personnel by prescribing essential restrictions against conflicts of interest in state government without creating unnecessary barriers to public service. Added Acts 1964, No. 110, § 1.”
The policy statement of the Code of Ethics seems to us clear and free from ambiguity. It seeks first to insure that public officials be independent, fair and impartial and that public office be not used for private gain in order that there be confidence in the integrity of the state government, all of which objectives are most laudable. To attain the desired goals, the Code *298 of Ethics expressly proscribes a conflict between the private interests of a public employee or official and his duties as such employee or official. Paragraph B of Section 1101 recognizes the benefits to he derived from the securing of those best qualified to fill positions of public employment and office and expressly states the legal safeguards against conflicts of interest are not to be designed so as to unnecessarily or unreasonably impede service in public positions by those best qualified to serve. As a'matter of legislative policy it is declared that employees and officials should not be denied the opportunity to serve the state except where conflicts of interest cannot be avoided. Paragraph C establishes the policy of prescribing essential restrictions against conflicts of interest without creating unnecessary barriers to public service by qualified individuals.
We find that the quoted language from the preamble to the Code of Ethics clearly indicates legislative intent to protect against conflicts of interest in governmental affairs and establish, by law, appropriate ethical standards by which the propriety of action by public servants is to be adjudged. We also note obvious legislative intent to set forth in detail the criteria by which the conduct of public officials and employees is to be judged insofar as concerns alleged violations of the code. The Code then creates the Ethics Commission to accomplish the stated aims of the statute and vests the Ethics Commission with broad but well defined powers in order that it may accomplish its assigned task. However, among the powers conferred upon the Ethics Commission we note the conspicuous absence of authority to establish ethical standards or criteria different from those expressly set forth by the legislature in the Code of Ethics statute.
The standards of conduct fixed by the Code itself do not go so far as to “prohibit any activity by a public official or employee with the agency which employs him which * * * gives the appearance of conflicting interests(Emphasis supplied by the Court.)
It is a cardinal principle of statutory interpretation that where the provisions of a law are clear and unambiguous, the Courts will not deviate from its terms on the pretext of pursuing its spirit. Hibernia Nat. Bank in New Orleans v. Louisiana Tax Commission, 195 La. 43, 196 So. 15. The foregoing rule of statutory construction is particularly pertinent to a statute quasi-criminal in nature.
With the foregoing principle in mind we shall proceed to examine the provision of the Code of Ethics appellant is alleged to have violated, namely, LSA-R.S. 42:1117 D which we have hereinbefore quoted in full. The particular conduct reprobated by said section is that no member of a board or commission shall participate in any transaction involving the board or commission on which he serves in which he has a substantial personal economic interest.
It must be conceded the leases held by the corporations of which appellant is a stockholder, as well as those owned in in-división by him with members of his family must be deemed “transactions” in view of the terms of LSA-R.S. 42:1111 L defining the term “Transaction involving the state” as follows:
“L. ‘Transaction involving the state’ means any proceeding, application, submission, request for a ruling or other determination, contract, claim, case or other such particular matter which the state employee or former state employee in question knows or should know
(1) Is, or will be, the subject of state action, or * * * ”
For appellant to be guilty of conduct contravening LSA-R.S. 42:1117 D he must have participated in the transactions noted. The word “participate” as used in the ap *299 plicable statute is defined in Section 1111 H thereof as follows:
“H. ‘Participate,’ in connection with a transaction involving the state, means to take part in state action or a proceeding personally as a state employee, through approval, disapproval, decision, recommendation, the rendering of advice, investigation, or the failure to act or perform a duty.”
As hereinbefore set forth, the stipulation of facts agreed to by appellee acknowledges that at no time while appellant was serving as a member of the Wild Life Commission has that body undertaken specifically to approve, disapprove, decide upon, recommend, render advice, investigate or perform an act or duty relating to the ownership of the leases owned by appellant or any corporation in which he has an interest. According to the express terms of the statute the stipulation completely exonerates appellant from a violation of Section 1117 D. Had Mr. Euquet personally participated in the negotiation or approval of a lease to him or a corporation of which he is a stockholder while serving as a member of the Wild Life Commission, a different mátter would be presented. Nevertheless, learned counsel for ap-pellee contends, as shown by the .herein-above quoted excerpts from appellee’s conclusions, that the acts of the employees of the Wild Life Commission are the acts of said commission and each of its members. Esteemed counsel further maintains that a member of the Wild Life Commission having an interest in a contract with said commission is in a position of conflicting interest prohibited by the Code when considered as a whole.
Considering first the contention that the acts of the employees of the Wild Life Commission are attributable to the members of said commission, we need only refer to the word “personally” appearing in the phrase “personally as a state employee” contained in LSA-R.S. 42:1111 H cited above. To accept the position of counsel for appellee is to write out of the code the term “personally as a state em-. ployee” contained in Section 1111 H, supra, and substitute in lieu thereof the doctrine of respondeat superior thus imposing vicarious liability upon a state employee in a quasi-criminal proceeding. We find no language in the code indicative of legislative intent to charge one employee with derivative liability for the action of another. On the contrary, the clear purport of the code appears to make one subject to its provisions only for one’s personal acts.
In response to appellee’s contention the act taken as a whole proscribes membership on the Wild Life Commission by any one holding oyster leases from that body, learned counsel for appellant directs our attention to Article VI, Section 1(A) (1) of the Louisiana Constitution which provides that of the Wild Life Commission’s seven members, six shall serve for terms of six years and of said six three shall be from the coastal parishes and represent the commercial fishing and fur industry. Counsel for appellant argues that appellee’s interpretation of the Code of Ethics would effectively bar from membership on the commission all persons possessing oyster leases contrary to the aforesaid constitutional provision which clearly makes them eligible for such membership. Appellant’s contention is countered by appellee’s argument to the effect that whereas the Code of Ethics bars the holder of an oyster lease from membership on the Wild Life Commission, a representative of the oyster industry need not necessarily be personally engaged in the oyster industry. In this regard it is contended that the industry may be represented by an agent or attorney who is not necessarily engaged in the principal’s business. We deem appellee’s argument somewhat strained considering the Code of Ethics prohibits participation in a transaction involving the Commission by the employee of a person having a substantial personal economic interest therein. The rationale of this policy stipulated by the legislature is readily apparent in that *300 one’s employee, agent or representative is unlikely to champion the interests of parties adverse to those of his employer or principal. The Ethics Committee rebuts by suggesting that representatives of the commercial fishing and fur industries may he procured who do not own or have an interest in oyster leases and such parties could properly represent said industry as provided for by the constitutional provision alluded to by appellant. This latter argument, however, would completely eliminate from membership on the Wild Life Commission all parties engaged in the pursuit of oyster growing, despite what we believe to be the plain constitutional intent to make such individuals eligible for appointment to the Wild Life Commission. Our careful consideration of Louisiana Constitution Article VI, Section 1(A) (1) leads to the conclusion it intended to ensure that all segments of the fishing and fur industries in the state would be eligible for membership on the Commission to the end that said industries be regulated by qualified individuals possessing the skill, knowledge and experience necessary to promote development of these aspects of our economy. The wisdom of said policy is a matter addressing itself exclusively to the discretion of the legislature and the electorate. The policy declaration of the Code of Ethics contained in Section 1101, supra, clearly recognizes the advantages and benefits to the state in securing the services of persons best qualified, provided legal safeguards be established to prevent conflicts of interest. Moreover, the code also recognizes that whenever such conflict does exist, resignation or removal from the board or commission is not required. In this connection we refer particularly to LSA-R.S. 42:1112 C which provides :
“C. Disqualification.' — Every state employee shall disqualify himself from participating in a transaction involving the state when a violation of this Part otherwise would result. The procedures for such disqualification shall be established by regulations issued pursuant to R.S. 42:1119.”
The foregoing provision constitutes a clear declaration of legislative policy that whenever a state employee is called upon to perform a duty or make a decision in his official capacity with respect to a transaction wherein a conflict exists between his official duties and personal interest, he need only recuse himself from participation therein to avoid violation of the code. Appellant is clearly a “state employee” within the definition of the term appearing in LSA-R.S. 42:1111 G.
In passing we observe that a draft of the Ethics Commission Rules appearing in the record apparently does not contain a prescribed procedure for disqualification of an employee as contemplated by Section 1112 C cited above.
Appellee next contends that the activities of board and commission members are regulated by a separate section of the code, namely, Section 1117 Title 42 LSA-R.S. It reasons that since it has held Section 1117 D prohibits a board or commission member from contracting with the agency he serves, and Paragraph F of Section 1117 permits a board or commission member to obtain a sealed competitive bid contract with the agency on which he sits provided he did not assist in the procurement of the state’s or the general contractor’s acceptance of such low bid, the only inference to be drawn therefrom is that Paragraph F is surplusage unless Paragraph D does not prohibit contracts of the nature involved herein. At first glance appellee’s argument appears sound but a close examination thereof reveals it to be without merit inasmuch as it completely disregards the cardinal rule of law that a penal or punitive statute is to be strictly construed. Militello v. Bankers Life & Casualty Company, La.App., 141 So.2d 454; State v. Vanicor, 239 La. 357, 118 So.2d 438; Henley v. Walling, La.App., 75 So.2d 536. In the interpretation of penal laws any doubt with respect to its meaning, scope *301 or application must be resolved in favor of the accused. State v. Viator, 229 La. 882, 87 So.2d 115. Penal laws being subject to the rule of strict construction they will not be construed to embrace matters not within their letter even though within their spirit; nothing can be added to them by inference. State v. Reed, 188 La. 402, 177 So. 252.
While it is clearly within the scope of legislative authority to proscribe any contract between a state official and the board or commission he serves as member, even one presenting no conflict of interest, the Code of Ethics as presently written prohibits such a contract only where a conflict of interest exists and the member personally participates in the transaction as a state employee acting on behalf of the state in one of the seven ways set forth in Section 1111 H, supra.
If the Legislature intended to prohibit all contracts between state employees, including board and commission members, and the state agencies which they serve, it could easily have done so in clear and unmistakable terms as it has done in the case of highway contracts. See LSA-R.S. 48:-421. In this case, however, it has not done so. On the contrary, the legislature has chosen to declare the express circumstances under which such contracts shall be considered a violation of the code. As we view the statute in question the sole function conferred upon the Ethics Commission is to administer the statute as written. To enable appellee to accomplish its aforesaid purpose the legislature has extended it certain specific powers and authority which may not be expanded or enlarged by appel-lee for the simple reason it lacks authority to add to its scope of operation. Nowhere in the statute do we find authorization for the creation of standards of conduct different from or in addition to those set forth by the legislature. In contending that Section 1117 D prohibits a contract between a board or commission member and the agency he serves where there is no conflict of interest but only an appearance of conflict, appellee is manifestly enlarging the scope of the particular paragraph and adding a standard of conduct not included by the legislature. This appellee lacks authority to do.
Since we are not herein concerned with a contract consummated through advertisement for bids therefor and acceptance thereof by negotiation, nothing herein contained is to be construed as holding such contracts in violation of the Code of Ethics. Obviously the Code of Ethics presents an entirely new and vastly broad field of statutory law, as yet uninterpreted by the Courts. Because of its penal and punitive nature, we proposed to consistently adhere to the hereinabove announced rule of strict construction. We also deem it inadvisable to speculate upon the possible application of the statute to cases or circumstances not presently before us.
Finally, we deem it necessary to dispose of appellee’s argument that the duties of the Wild Life Commission require constant and daily regulatory activities which involve existing leases consequently mere membership on the commission while holding a substantial interest in oyster leases, is in violation of the Code of Ethics. The progressive reasoning employed by appel-lee in this respect is rather intricate. As we understand appellee’s approach it proceeds in steps as follows:
LSA-R.S. 42:1117 D, as previously stated, prohibits participation in certain “transaction [s] involving the board or commission.” The quoted phrase “transaction involving the board or commission,” is synonymous with the phrase “transactions involving the state.” Section 1111L(1) of the statute defines “transactions involving the state” in terms of “state action.” In turn, “State Action” is defined in LSA-R.S. 42:1111 F as follows:
“F. 'State action’ means any action on the part of the state or a state agency, including, but not limited to
*302 (1) Any decision, determination, finding, ruling or order, including the judgment or verdict of a court or a quasi-judicial board; and
(2) Any grant, payment, award, license, contract, transaction, decision, sanction or approval, or the denial thereof, or the failure to act with respect thereto.”
The argument continues in the assertion that in the “application of the prohibitions of the Code of Ethics to any activity, inferentially or directly, the definition of ‘responsibility’ in connection with a transaction involving the state must he taken into consideration.” Appellee’s chain of reasoning next points out that “responsibility” is defined in LSA-R.S. 42:1111 J, thusly:
“J. ‘Responsibility,’ in connection with a transaction involving the state, means the direct administration or operating authority, whether intermediate or final, and either exercisable alone or with others, and either personally or through or with others or subordinates, to effectively approve, disapprove, fail to act or perform a duty, or otherwise direct state action in respect to such transaction.”
The Ethics Commission’s polemics concludes on the assumption that considering together all of the defined terms here-inabove mentioned, the failure to act or to otherwise direct state action with respect to oyster leases, which require constant, daily regulatory activities, is reprobated to the same extent as confection of the lease, consequently membership on the Wild Life Commission by a person holding oyster leases violates the Code.
The answer to appellee’s involved theory is that definition of a term used in the Code adds nothing to a section or provision in which the term does not appear. We note that the term “responsibility” is not contained in the section under consideration, namely, 1117 D. The remainder of the argument, however, appears meritorious to the extent definitions of the terms “state action” and “transaction involving the state” are germane to an interpretation of Section 1117 D.
Section 1117 D contains clear, express and unambiguous language which must be given effect strictly in accord with its letter. It prohibits a transaction in which the board or commission member (or other persons in which he is interested as therein set forth) has a substantial personal economic interest, "as distinguished from that of a general class or general group of persons." (Emphasis supplied by the Court.) Manifestly the interest appellant may have in the regulation of the oyster industry, such as in the opening and closing of seasons for taking seed oysters and the making of decisions affecting all persons engaged in the particular industry, is not peculiar or personal to him alone. Such decisions affecting the interests of all members of the general class or group are not reprobated by the statute.
In determining appellant to be in violation of the Ethics Code under the circumstances shown, the Ethics Commission has exceeded its authority by arbitrarily extending the provisions of the code to a factual situation the legislature has not seen fit to categorize as a violation of its terms. Accordingly, the decision of the Ethics Commission is hereby reversed and the proceedings against appellant A. J. Briquet dismissed.
Reversed and rendered.