ROGERS, J.
 

 This is a summary proceeding by the state tax collector for the city of New Orleans against the State Agricultural Credit Corporation, Inc., for additional license taxes for the years 1929, 1930, and 1931, amounting, in the aggregate, to $2,800.
 

 Plaintiff alleged that defendant is engaged in the business defined by Act No. 221 of ■1926, and is subject to the payment of the license tax provided therein. Defendant denied plaintiff’s allegations; averred that its license tax is governed by the provisions of section 25 of Act No. 205 of 1924, and that it had paid the proper license taxes for the years for which it is sought to be held. In the alternative, defendant pleaded the unconstitutionality of Act No. 221 of 1926.
 

 The court below rendered judgment in fa-> vor of plaintiff, and defendant appealed.
 

 The purpose of Act. No. 221 of 1926, as indicated by its title, is to levy an annual license tax on all persons, firms, corporations, or associations of persons - engaged in the business of purchasing, selling, trading- in, or lending on notes secured by chattel mortgage, vendors, contractor’s, mechanic’s or other statutory liens, commonly known as finance or securities companies.
 

 The primary question to be decided is whether the business in which the defendant is engaged is within the purview of the legislative act. The facts disclosed by the record which are necessary to the decision of the question are as follows, viz.:
 

 The State Agricultural Credit Corporation, Inc., was organized in the year 1926 to utilize the facilities provided by the Federal Farm Loan Act and its amendments (see 12 USCA § 641 et seq.). The act of Congress itself provides that it shall be under the direction and control of the Federal Farm Loan Board therein created. By an amendment to the act (12 USCA § 1021 et seq.), the Federal Farm Loan Board is empowered to charter twelve “Federal Intermediate Credit Banks,” to be located in the same cities as the twelve Federal Land Banks. One of these banks is located in the city of New Orleans. The statute authorizes the Federal Intermediate Credit Bank to discount for, or purchase from, any agricultural credit corporation organized under the laws of any state, with its indorsement, any note, draft, or other obligation the proceeds of which have been used in the first instance for agricultural purposes. According to the rules and regulations of the Federal Farm Loan Board, “The term ‘advanced in the first instance for any agricultural purpose’ shall be held to mean advanced in the first instance to a person engaged in agriculture for the purpose of carrying on agricultural production or defray
 
 *593
 
 ing any indebtedness arising therefrom.” And the term “agricultural credit corporation” is defined to be “a corporation organized under the laws of any State for the purpose of loaning money for agricultural purposes.”
 

 The defendant, State Agricultural Credit Corporation, Inc., as shown by its charter, is engaged in the business of extending credit to planters and farmers of the state so that they may secure, maintain, and carry on satisfactorily agricultural production, accepting interest-bearing notes, or other written evidences of debt, in representation of the advances made to the borrowers, “all in accordance with the rules and regulations of or agreements with the Federal Farm Loan Board, created by Act of Congress, and to thereafter have the same re-discounted by the Federal Intermediate Credit Bank, or other banking institutions, as and when occasion may require.”
 

 The Federal Intermediate Credit Bank at New Orleans recognizes the State Agricultural Credit Corporation, Inc., as an “agricultural credit corporation” organized for the purpose of lending money for agricultural purposes as embraced within the definition of the term set forth in the rules and regulations of the Federal Farm Loan Board. Under its by-laws, rules, and regulations, the State Agricultural Credit Corporation, Inc., is required, in turn, to adopt and promulgate as occasion demands such by-laws, rules, and regulations as may be necessary to maintain satisfactory relations with the Federal Intermediate Credit Bank at New Orleans and the Federal Farm Loan Board at Washington.
 

 And the Federal Intermediate Credit Bank at New Orleans rediscounts the notes or other written evidences of indebtedness of the planters or farmers who obtain advances from the State Agricultural Credit Corporation, Inc., in the words of the crop lien and chattel mortgage, “to plant, cultivate, grow, harvest and carry on during the current crop year * * * crops of sugar cane, com, hay and other agricultural products.”
 

 After the borrower from the defendant corporation has executed his notes which are secured by a lien on his crop and a mortgage on his chattels, and the notes are accepted for rediscount by the Federal Intermediate Credit Bank at New Orleans, “the sum available for requisition under all the terms, conditions, circumstances, stipulations and provisions contained in the act,” granting the lien and mortgage, is entered upon the books of the defendant corporation and is charged with all amounts paid to the borrower as provided in the notarial act. No requisitions of the borrower are honored, unless “made in strict compliance with the obligations assumed by him and in keeping with the budget that shall have accompanied his application” for his advances. The credit corporation honors the borrower’s requisitions for his pay rolls either weekly or biweekly only under the conditions set forth in the authentic act; and the borrower’s requisitions “for all fertilizers, peas, feed, supplies of any kind, work animals and farming accessories” must be approved by the crop supervisor of the defendant corporation, subject to the approval of the Board or Executive Committee and under the conditions set forth in the authentic act.
 

 
 *595
 
 A number of conditions are embodied in tbe authentic act, evidencing tbe loan, the crop lien, and the chattel mortgage. Among these conditions are the following, viz.:
 

 (a) All requisitions of the borrower are at all times subject to the investigation of the lender, which has the right to reject any requisition in whole or in part.
 

 (b) The borrower is prohibited from making any other contract for advances without the written consent of the lender.
 

 (c) The borrower must actively pursue and conduct his crop operations as a prudent administrator, subject always to the supervision of the lender.
 

 (d) In the event of the death of the borrower or his inability or failure to actively conduct his crop operations or his default, active or passive, in any obligation assumed, the lender is accorded the right to enter upon the premises, for its protection or the protection of its transferrees to take charge of the crops, carry them to completion, and to harvest and sell the same.
 

 (e) In the event of damage to the borrower’s crops, resulting from any fortuitous event (such as a drought, excessive rainfall, freeze, windstorm, overflow, etc., such causes being illustrative and not exclusive), or upon impairment of the crops from any other cause, as security for the advances aforementioned, then the lender, at its option and in its judgment, shall be at liberty to refuse to honor the borrower’s requisition for money-, goods, and supplies, or any of them; the lender’s rights and those of all persons holding under it (under the crop lien and privilege, and the pledge, and the pledge and pawn of the borrower’s crops and chattel mortgage, hereinafter recognized and hereby granted) to remain in full force and effect up to the full amount of the note reijresentinr: same, with interest and attorney’s fees and costs, less a credit equal to the amount not yet advanced.
 

 According to the facts developed on the trial of the case, it appears that the State Agricultural Credit Corporation, Inc., was created to serve as an intermediary between the Federal Farm Loan Board at Washington, through its subsidiary, the Federal Intermediate Credit Bank at New Orleans, and the planters and farmers of the state, whereby the latter might obtain the necessary funds for satisfactorily maintaining and carrying on their agricultural operations. The Federal Intermediate Credit Bank exercises supervision over the State Agricultural Credit Corporation, Inc., and the State Agricultural Credit Corporation, Inc., exercises supervision over its borrowers.
 

 When the borrower signs the notes and executes the crop lien and chattel mortgage, he does not immediately receive the amount represented by the notes, but only as and when required he makes requisitions for advances to meet his pay rolls and to pay for his fertilizer, equipment, and supplies, subject to the approval of the State Agricultural Credit Corporation, Inc., which under certain conditions may refuse to honor the requisitions. And the borrower is by no means certain of obtaining all or any part of the amount for which he gives his notes, since, in the event of a fortuitous event damaging the crops, or if tjie Federal Intermediate Credit Bank should refuse to discount the borrower’s notes, then no further advances are made. In these
 
 *597
 
 circumstances, the obligation of the borrower to pay the amount represented by his notes secured by the crop lien and chattel mortgage does not become absolute until the full amount called for by the notes has actually been advanced to him.
 

 The general principle of all fiscal legislation is that a taxing statute must be construed strictly. The words imposing a tax must be found in the statute, and, if such words are not found there, the tax cannot be imposed.
 

 And it is a general rule of statutory construction that qualifying words or phrases are to be applied to the words or phrases immediately preceding.
 

 Where a statute on its face appears to limit the operation of its provisions to particular persons or things by enumerating them, and then engrafts on the indicating clause another clause further modifying and restricting its application, both clauses should be construed together, the terms of the indicating clause being governed by the terms of the modifying clause; thus excluding the possibility of misinterpreting a statute by extending its provisions to cases not intended by 'the Legislature to be brought within its purview.
 

 When we examine Act No. 221 of 1926, in the light of these legal principles, we find that, after levying an annual license tax on persons, firms, corporations, or associations of persons engaged in the business of purchasing, selling, trading in, or lending on notes secured by chattel mortgage and various statutory liens, the statute proceeds to modify the general scope of the indicating clause by engrafting a particular clause thereon restricting the operation of the statute to the persons, firms, corporations, or associations of persons “commonly known as finance or securities companies.”
 

 In other words, the annual license tax is imposed by the statute only upon those natura^ or artificial persons dealing in notes secured by chattel mortgage and statutory liens that are commonly or ordinarily regarded as finance or securities companies.
 

 We do not think that the business in which the defendant credit corporation is engaged can be said to be a business engaged in by what are “commonly known as finance or securities companies,” and therefore defendant, in our opinion is not subject to the provisions of the statute levying an annual license tax on such companies. Our opinion in this respect renders unnecessary any discussion on our part of defendant’s alternative plea that the statute herein sought to be enforced is unconstitutional.
 

 For the reasons assigned, the judgment appealed from is annulled, and plaintiff’s de mand is rejected.
 

 ST. PAUL and BRUNOT, JJ„ dissent.