CHIASSON, Judge.
Both parties suspensively appeal from the judgment of the trial court. South Central Bell Telephone Company (South Central Bell) appeals that portion of the judgment which held that the Collector of Revenue (Collector) was entitled to the taxes paid under protest by South Central Bell. The Collector appeals that portion of the judg-ment which denied its reconventional demand for attorney’s fees.
The issue is whether, for purposes of the Louisiana Transportation and Communication (T&C) tax, La.R.S. 47:1001, et seq., the “gross receipts” upon which the tax is based includes funds derived by South Central Bell from the sale of advertising in its directories, commonly referred to as the “yellow pages” but also including “bold face” print in the “white pages”.
Insofar as applicable herein, the trial court in its written reasons for judgment held:
1. “. . . that the only business of a public utility exempt from the tax is that portion involved in interstate commerce. . . . ”
2. “. . . that South Central Bell’s receipts from the sale of advertising in its directories are receipts from a public utility business and are therefore subject to the Louisiana gross receipts tax on public utilities. . .”
We find that the record establishes the following facts:
(1) That South Central Bell is a public utility company;
(2) That the Louisiana Public Service Commission regulates the rates that South Central Bell can charge for its telephone services;
(3) That the gross receipts of South Central Bell from all business engaged in by it are considered by the Louisiana Public Service Commission in establishing telephone rates;
(4) That the Louisiana Public Service Commission requires that South Central Bell publish the “white pages” of its directories;
(5) That it is not mandatory that South Central Bell publish the “yellow pages” of its directories;
(6) That the Louisiana Public Service Commission does not exercise any control over the publication or rates to be charged for advertising in the “yellow pages” of the telephone directories, nor does any other governmental agency;
(7) That South Central Bell does not have the exclusive right to conduct a classified directory advertising business;
(8) That classified directories are published and distributed in Louisiana by other publishers and the receipts of these other publishers are not subject to the “T&C” tax;
(9) That South Central Bell pays occupational license tax pursuant to La.R.S. 47:358 upon its gross receipts from all businesses, public utility and non-public utility, engaged in by the telephone company;
(10) That the actual solicitation of sales of advertising in the “yellow pages” is subcontracted to L. M. Berry & Company by South Central Bell;
(11) That the receipts from the sale of advertising are accounted for separately from receipts received from telephone services rendered and charges for long distance calls;
(12) That South Central Bell has not paid “T&C” tax on its gross receipts from advertising since 1962;
*612 (13) That on May 5, 1972, the Collector advised South Central Bell that “effective for the quarter ending September 30, 1971, firms defined as utilities under LRS 47:1003 must include the entirety of all gross receipts derived from the conduct of their business (whether it be gross receipts from storage, rentals, swamper time, lease or location work, or other company gross receipts either incidental or not to the utility phase of their operation).” (Emphasis supplied by Collector);
(14) That South Central Bell paid the additional assessment under protest and timely filed suit to recover the additional taxes paid pursuant to La.R.S. 47:1576.
The “T&C” tax assesses an additional license tax for the privilege of engaging in the business of owning and/or operating any public utility in this state, of two per centum (2%) of the gross receipts from its intrastate utility business. (La.R.S. 47:1001). La.R.S. 47:1003(1) includes “telephone companies” within the definition of “public utility”; and “telephone companies” is defined in La.R.S. 47:1003(7) as “any person, firm, association or corporation, domestic or foreign, owning and operating, or owning or operating, any telephone line in this state with appliances for the transmission of messages by speech or sound, and engaged in the business of furnishing telephone service for compensation.” “Gross receipts” is defined in La.R.S. 47:1003(11) as “the total amount of billings for services rendered, and all receipts from business beginning and ending within the state . . .”
La.R.S. 47:1004 provides:
“The provisions of this Part shall apply to any person who is or may be engaged in any business, a portion of which is covered by or included in the various classes of business defined in R.S. 47:1003; but only upon the gross receipts derived from that portion of the business which is covered by or included in and not exempted by R.S. 47:1003 shall be subject to tax.”
Pursuant to the rule-making power granted to the Collector by La.R.S. 47:1511, the following relevant rules and regulations were promulgated by the Collector, to wit:
T&C Article 1003.1 provides:
“2. ‘Gross receipts’ means the total amount of billing for services rendered and all receipts from business beginning and ending within the state.
“(a) ‘All receipts from business’ is not limited to revenues received from the portion of business covered in the various classes of business as defined in R.S. 47:1003. Once a taxpayer is defined as a public utility, the tax is based upon all gross receipts from any business engaged in.”
Pertinent principles of statutory construction applicable to the facts of the instant case were set out in State v. State Agricultural Credit Corporation, 176 La. 590, 146 So. 159 (1933), wherein, dealing with a dispute over a license tax, the Supreme Court stated:
“The general principle of all fiscal legislation is that a taxing statute must be construed strictly. The words imposing a tax must be found in the statute, and, if such words are not found there, the tax cannot be imposed.
“And it is a general rule of statutory construction that qualifying words or phrases are to be applied to the words or phrases immediately preceding.
“Where a statute on its face appears to limit the operation of its provisions to particular persons or things by enumerating them, and then engrafts on the indicating clause another clause further modifying and restricting its application, both clauses should be construed together, the terms of the indicating clause being governed by the terms of the modifying clause; thus excluding the possibility of misinterpreting a statute by extending its provisions to cases not intended by the Legislature to be brought within its purview.”
In Hibernia Nat. Bank v. Louisiana Tax Commission, 195 La. 43, 196 So. 15 (1940), the Supreme Court further stated:
“It is also well-established that tax laws are to be interpreted liberally in favor of *613 taxpayers and that the words defining things to be taxed should not be extended beyond their clear import. Uncertainty in the language of the statute must be resolved against the government and in favor of the taxpayer. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 508, 52 S.Ct. 260, 76 L.Ed. 422, 429; State v. Standard Oil Co., 188 La. 978, 992, 178 So. 601; State v. State Agricultural Credit Corp., Inc., 176 La. 590, 597, 146 So. 159, and Elmer Candy Co. v. Fauntleroy, 5 Cir., 24 F.2d 95.”
Finally, Article 14 of the Louisiana Civil Code mandates that in statutory construction “(t)he words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words.”
Applying these principles to the statutory laws pertaining to this ease we find that the Legislature imposed upon anyone owning and/or operating any public utility a license tax “. . .in addition to all other taxes and licenses levied and assessed in this state ... for the privilege of engaging in such business .” at the rate of two per centum (2%) of the gross receipts from its intrastate business. La.R.S. 47:1001. (Emphasis added). The underlined portion clearly relates to “public utility” and is the only type of business which is made subject to the additional license tax. This additional tax levied by the Legislature upon anyone owning or operating a public utility was limited to those engaged “. . .in such business carried on wholly in this state, and not a part of interstate commerce.” La.R.S. 47:1002. The Legislature thereafter defined “public utility” to mean “. railroads and railways, sleeping cars, motor bus lines, motor freight lines, express companies, telephone companies, telegraph companies, boat or packet lines, and pipe lines, as herein defined.” La.R.S. 47:1003. Advertising companies are not included therein. In La.R.S. 47:1003(7) “telephone companies” is defined to mean anyone owning and/or operating, “. . . any telephone line in this state with appliances for the transmission of messages by speech or sound, and engaged in the business of furnishing telephone service for compensation.” The mere owning and/or operating of telephone lines with appliances for the transmission of messages by speech or sound is not alone sufficient to subject one to the “T&C” tax, but it requires in addition thereto that that person be engaged in the business of furnishing telephone service for compensation. Anyone meeting this two-fold test is subject to the additional license tax upon the “gross receipts” which is defined as “. . . the total amount of billings for services rendered, [over telephone lines with appliances necessary for transmission of messages by speech or sound], and all receipts from business beginning and ending within the state, [long distance calls originating and terminating within the state but not otherwise] . . .” La.R.S. 47:1003(11). (Words in brackets added).
We construe none of the above as classifying advertising as a public utility or imposing a tax upon anything other than the public utility portion of the business. The Collector would have us ascribe a meaning to the last phrase in the definition of “gross receipts” so as to make that phrase read, “and all receipts from [any other] business beginning and ending within the state . . . ”, which is not within our providence to do.
The Collector interprets La.R.S. 47:1004, quoted hereinbefore, as applying only “to those parts of one’s business which are not constitutionally taxable, i. e. interstate commerce.” However, the statute specifically refers to that portion of a business “which is covered by or included in the various classes of business defined in R.S. 47:1003,” namely, public utilities as therein defined to be railroads, telephone companies, etc. The proviso following relates back to the first clause contained therein and not back to the definition of “gross receipts”. This proviso reads in part, “. . . but only upon the gross receipts derived from that portion of the business which is covered by or included *614 in . R.S. 47:1003 shall be subject to tax.” It is not solely limited to interstate commerce as the Collector contends, but rather, this statute expressly provides that, where part of a company’s business is covered by or included in La.R.S. 47:1003, and part of its business is not covered by or included in La.R.S. 47:1003, only the part covered by or included in La.R.S. 47:1003 is subject to the tax. If there exists any ambiguity as to the subject matter of R.S. 47:1004, then its title “Businesses partly taxable” clarifies any such ambiguity. Further, La.R.S. 47:1001 and La.R.S. 47:1002 have previously specifically and clearly limited the “T&C” tax to intrastate commerce.
We find the above statutory provisions to be clear and unambiguous. However, assuming arguendo that there is ambiguity within the said provisions, the well settled principles of statutory construction, as outlined above, require that they be interpreted liberally in favor of the taxpayer.
La.R.S. 47:1004 recognizes that a public utility company can simultaneously be engaged in a non-public utility business, and in such case, only the public utility gross receipts of the business are subject to the “T&C” tax.
The Collector’s regulation, T&C Article 1003.1 2.(a) is in direct conflict with La.R.S. 47:1004 and is therefore in contravention of that portion of La.R.S. 47:1511 which provides . . Such rules and regulations shall not be inconsistent with the provisions of this Sub-title or other laws or the constitution of this state.”
The Collector contends that the “yellow pages”, just as the “white pages”, are an integral part of . . engag(ing) in the business of furnishing telephone service for compensation.” La.R.S. 47:1003(7). Therefore, it is asserted that receipts therefrom should be included with other receipts of the general telephone company operations for purposes of determining the amount of “T&C” taxes due. Notwithstanding the degree of integration between the two businesses, as asserted by the Collector, we find that operation of the general telephone company business is in no way dependent upon the operations pf the “yellow pages” business. One can function, as equally and adequately, independent from the other. The furnishing of advertising in the “yellow pages” has nothing to do with the operation of telephone lines with appliances for the transmission of messages by speech or sound.
We are therefore of the opinion that funds derived by South Central Bell from the sale of advertising in its directories are not receipts from a public utility business and are not subject to the gross receipts tax on public utilities.
The judgment of the trial court is therefore reversed and judgment is rendered herein in favor of South Central Bell Telephone Company and against the Collector of Revenue, State of Louisiana, in the sum of One Million, One Hundred Seventeen Thousand, Sixty-Nine and. 28/100 ($1,117,-069.28) Dollars, with interest as provided by law. The Collector of Revenue is 'assessed with those costs permitted by law.
REVERSED AND RENDERED.